**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CASE NO. 3:17-cv-00643-FDW-DCK**

| | |
|---|---|
| **ERIC KINSINGER and DENISE KINSINGER,** | ) ) ) |
| **Plaintiffs,** | ) ) ) ) ) ) ) |
| **vs.** | ) ) ) |
| **SMARTCORE, LLC; SMARTCORE ELECTRICAL, LLC; SMARTCORE ELECTRICAL SERVICES, LLC; SMARTCORE, LLC GROUP HEALTH BENEFIT PLAN; JARED CRAFTON CROOK; STEVEN MATTHEW GOOD; WILLIAM H. WINN, JR.; STAR MARKETING AND ADMINISTRATION, INC. d/b/a STARMARK, INC.; TRUSTMARK LIFE INSURANCE COMPANY; and TRUSTMARK INSURANCE COMPANY,** | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| **Defendants.** | ) ) ) |

**OPPOSITION OF DEFENDANTS SMARTCORE, LLC, SMARTCORE ELECTRICAL, LLC, SMARTCORE ELECTRICAL SERVICES, LLC, SMARTCORE, LLC GROUP HEALTH BENEFIT PLAN, STEVEN MATTHEW GOOD, and WILLIAM H. WINN, JR. TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

1

Defendants SmartCore LLC, SmartCore Electrical LLC, SmartCore Electrical Services, LLC, SmartCore, LLC Group Health Benefit Plan, Steven Matthew Good, and William H. Winn, Jr. ("SmartCore Defendants") hereby oppose the motion for summary judgment brought by Plaintiffs Eric Kinsinger and Denise Kinsinger.  In support of their opposition, SmartCore Defendants state as follows:

## I.      STATEMENT OF FACTS AND PROCEDURAL BACKGROUND

Plaintiff Eric Kinsinger worked as an employee for SmartCore, LLC and participated in its health plan, purchasing coverage for himself and his wife, Plaintiff Denise Kinsinger.  (Second Amended Complaint ("SAC") ¶¶ 15, 19, 24-25.)  SmartCore Defendants do not dispute that the health plan is covered by the Employee Retirement Income Security Act of 1974, *as amended*, 29 U.S.C. §§ 1001, *et al*. ("ERISA").  SmartCore contracted with Star Marketing and Administration, Inc. ("Starmark") to serve as the claims processor of the plan, making eligibility and benefits determinations.  SAC ¶ 22; ERISA Administrative Record ("AR") pp. 5, 8 (Docket No. 69, pp. 1, 5 [referring to Starmark as the claims processor]).

While Eric Kinsinger remained employed by SmartCore, Denise Kinsinger arranged to undergo a hysterectomy on or about January 8, 2016.  (SAC ¶ 32.)  Eric Kinsinger told several other employees at SmartCore that the procedure was elective and not medically necessary.  (Declaration of William H. Winn, Jr. (SmartCore Defendants' Exhibit A) ¶ 3; Declaration of Steven Matthew Good (SmartCore Defendants' Exhibit B) ¶¶ 3-4; Declaration of Deborah Anne Good (SmartCore Defendants' Exhibit C) ¶ 4.)  Plaintiffs allege that Starmark pre-certified Mrs. Kinsinger's procedure ("Procedure"), although in fact the only pre-certification notice in the record from Starmark (dated January 8, 2016) explicitly states that it is not a guarantee of benefits and contains no determination of medical necessity.  (Steven Matthew Good Decl. ¶ 9 and Exhibit B-2 hereto.)  Moreover, Starmark (in a document containing the header "PLAN ADMINISTERED BY STARMARK") and addressed to Plaintiff Eric Kinsinger dated

February 17, 2016, recorded the denial of benefits for the Procedure and showed Plaintiff Denise Kinsinger (listed as "patient") as fully responsible for the entire cost of the Procedure, with an explanation reading "CLAIM IS DENIED DUE TO GROUP'S TERMINATION." (AR 084, Docket No. 69-3, p.1.)

On or about January 7, 2016, the day before Mrs. Kinsinger's procedure was scheduled to take place, Mr. Kinsinger, while working at the SmartCore offices, received a telephone call from a Starmark representative. According to Mr. Kinsinger's contemporaneous account of the call to SmartCore employees with whom he was working just after the call ended, the Starmark representative informed Mr. Kinsinger that Mrs. Kinsinger's procedure would not be covered by SmartCore's insurance plan and that Starmark had denied coverage for the procedure. (Deborah Good Decl. ¶¶ 3-4; Declaration of Jared Crafton Crook (SmartCore Defendants' Exhibit D) ¶ 3; Winn Decl. ¶ 5.). Mr. Kinsinger informed the SmartCore employees that he and his wife were proceeding with the procedure anyway and would pay for it out of pocket. Id.

On or about January 8, 2016, Mrs. Kinsinger had the procedure in question at Carolinas HealthCare in Pineville. (SAC ¶ 33.)

On or about February 8, 2016, for the first time, Starmark informed SmartCore that Starmark had "retroactively" canceled SmartCore's health insurance coverage as of January 1, 2016. (Steven Matthew Good Decl. ¶ 6; Winn Decl. ¶ 6.) On February 15, 2016, Eric Kinsinger e-mailed SmartCore principal William Winn and informed Winn that Mr. Kinsinger was aware that Starmark had canceled SmartCore's coverage "per the information I received from Starmark." (Winn Decl. ¶ 12, Exhibit A-1.) SmartCore's principals, Winn and Steven Matthew Good, sent a letter to all SmartCore employees on February 19, 2016 indicating that SmartCore's insurance had been canceled. (Steven Matthew Good Decl. ¶ 7, Exhibit B-1.) On February 19, 2016, Mr. Kinsinger informed SmartCore that he was voluntarily resigning from his position. (Winn Decl. ¶ 9; SAC ¶ 35.)

On March 31, 2016, responding to a letter from counsel representing Plaintiffs, SmartCore sent a letter to Plaintiffs asking for more information about Mrs. Kinsinger's procedure and the resulting liability to the Kinsingers and enclosing a copy of the plan documents, which all employees including Mr. Kinsinger had already previously received. Neither Plaintiffs nor anyone else ever responded to this letter. (Winn Decl. ¶¶ 10-11, Steven Matthew Good Decl. ¶ 11, Exhibit B-3.)

SmartCore's benefits plan provides that any denial of benefits must be appealed internally within 180 days of the denial. (Steven Matthew Good Decl. ¶ 11, Exhibit B-4 [excerpts of plan document], p. 50, highlighted portion; also set forth at AR 47.) Plaintiffs did not file any such appeal until September 23, 2016 (SAC ¶ 48), which was more than 180 days (i) after Starmark denied benefits for Mrs. Kinsinger's procedure in a phone call to Mr. Kinsinger on January 7, 2016, which Mr. Kinsinger told SmartCore employees about contemporaneously; (ii) more than 180 days after Eric Kinsinger e-mailed Winn on February 15, 2016 demonstrating awareness of the cancellation of SmartCore's insurance as of January 1, 2016; and (iii) more than 180 days after SmartCore's letter to all employees on February 19, 2016 informing them of Starmark's cancellation, retroactive to January 1, 2016, of SmartCore's insurance coverage. Additionally, Plaintiffs' appeal was more than 180 days after Starmark's February 17, 2016 document addressed to Eric Kinsinger showing that Plaintiffs were fully responsible for the entire cost of the Procedure, with an explanation reading "CLAIM IS DENIED DUE TO GROUP'S TERMINATION." (AR 084.)

In February of 2018, Winn had a chance in-person encounter with Eric Kinsinger, who apologized for this litigation and told Winn that he was pursuing the litigation in order to "go after Starmark" for denying benefits for Mrs. Kinsinger's procedure. (Winn Decl. ¶ 13.)

The Kinsingers' Second Amended Complaint alleges seven counts of relief: (1) for failure to pay wages violation of the North Carolina Wage and Hour Act; (2) for

breach of contract stemming from the alleged failure to pay wages; (3) for wrongful denial of benefits under ERISA; (4) for breach of fiduciary duty under ERISA; (5) for other appropriate equitable relief under ERISA; (6) for damages for failure to produce documents required by ERISA; and (7) for attorney fees under ERISA.

Plaintiffs moved for summary judgment on December 19, 2018; SmartCore Defendants filed their motion for summary judgment the same day.

## II.    ARGUMENTS & AUTHORITIES

### A.    <u>The summary judgment standard</u>.

Plaintiffs and SmartCore Defendants have each moved for summary judgment. When parties file cross-motions for summary judgment, the trial court examines each motion separately under the summary judgment standard. <u>Defs. of Wildlife v. N.C. Dep't of Transp.</u>, 762 F.3d 374, 392 (4th Cir. 2014). The court will scrutinize each party's case "to determine whether the [party] has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial." <u>Mitchell v. Data Gen. Corp.</u>, 12 F.3d 1310, 1315-16 (4th Cir. 1993).

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). However, "this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U. S. 242, 247-48 (1986) (emphasis in original). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party." <u>Libertarian Party of Va. v. Judd</u>, 718 F.3d 308, 313 (4th Cir. 2013). A fact is material if it might affect the outcome of the suit under the governing substantive law. <u>Anderson</u>, <u>supra</u>, 477 U.S. at 248.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it

believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.' " Fed. R. Civ. P. 56(e); Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 525 (4th Cir. 2003).

The court must view the evidence and any inferences therefrom in the light most favorable to the nonmoving party. Anderson, supra, 477 U.S. at 255. "Summary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 568 (4th Cir. 2015). Moreover, the court cannot weigh the evidence or make credibility determinations. Mercantile Peninsula Bank v. French (In re French), 499 F.3d 345, 352 (4th Cir. 2007), citing Anderson, supra, 477 U.S. at 255; see also Fed.R.Civ.P. 56 Advisory Committee's Note (1963) ("Where an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate."). In the face of conflicting evidence, such as competing affidavits, summary judgment ordinarily is not appropriate because it is the function of the factfinder to resolve factual disputes. Courtney-Pope v. Bd. of Educ. of Carroll Cty., 304 F. Supp. 3d 480, 489 (D. Md. 2018), citing Black & Decker Corp. v. United States, 436 F.3d 431, 442 (4th Cir. 2006); see also Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 644–45 (4th Cir. 2002).

Summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 252. Additionally, "the mere existence of a scintilla of evidence in support of the [moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [moving party]." *Id.*

6

**B.** **The Court should decline to exercise supplemental jurisdiction over Plaintiff Eric Kinsinger's claims for breach of contract and violations of the North Carolina Wage and Hour Act.**

Plaintiffs allege that SmartCore Defendants failed to pay Eric Kinsinger wages, constituting both a violation of the North Carolina Wage and Hour Act, N.C. Gen. Stat. §§ 95-25.1 *et seq*. and a breach of contract.[1]  Plaintiffs assert that the Court has supplemental jurisdiction over these two claims in an action otherwise founded upon a federal question.  (SAC ¶ 13.)

Supplemental jurisdiction allows parties to append state law claims over which federal courts would otherwise lack jurisdiction, so long as they form part of same case or controversy as the federal claims.   Shanaghan v. Cahill, 58 F.3d 106 (4th Cir. 1995).

Here, however, Mr. Kinsinger's two wage-related claims have nothing to do with his remaining five federal claims falling under ERISA - - for denial of benefits, "other equitable relief," breach of fiduciary duty, failure to provide plan documents, and attorney fees.  Mr. Kinsinger's wage claims, which have no independent basis for federal jurisdiction, allege that SmartCore Defendants did not pay him wages owed due to an unspecified contract.  By contrast, the ERISA claims – which involve both Eric Kinsinger and Denise Kinsinger rather than Mr. Kinsinger alone – allege (*inter alia*) that SmartCore Defendants and third-party defendants denied coverage for the medical procedure that Mrs. Kinsinger underwent in January of 2016.  The two sets of claims do not derive from a common nucleus of operative facts and the Court has discretion to decline to exercise supplemental jurisdiction over the state law claims.  Axel Johnson, Inc. v. Carroll Carolina Oil Co., 145 F.3d 660, 662 (4th Cir. 1998).

---

[1] These causes of action fail to distinguish between Eric and Denise Kinsinger.  Mrs. Kinsinger was not an employee of any defendant and has no valid cause of action for breach of contract or nonpayment of wages, and her claims against the SmartCore Defendants for breach and unpaid wages should be dismissed accordingly for failure to raise a genuine issue of material fact.

Eric Kinsinger's wage claims do not involve any of the non-SmartCore Defendants, they do not involve ERISA, they arise from a different nucleus of operative facts, and they do not even involve Denise Kinsinger, the other plaintiff. The wage claims will also not involve the same evidence. See SV Int'l, Inc. v. Fu Jian Quanyu Indus. Co., 820 F. Supp. 2d 677, 693 (M.D.N.C. 2011) (one basis for exercising supplemental jurisdiction is the need to "avoid duplicative evidence" for the sake of judicial economy). The Court has discretion to decline to exercise subject matter jurisdiction over Mr. Kinsinger's wage claims, and should do so here.

In addition, a court may dismiss a case when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); Shanaghan, 58 F.3d at 110. Because the Court should dismiss all of Plaintiffs' ERISA-based claims as a matter of law through a grant of summary judgment to SmartCore Defendants as discussed in SmartCore Defendants' own motion for summary judgment, it should also dismiss Mr. Kinsinger's unrelated wage claims.

If the Court declines to do so, it should deny summary judgment because SmartCore Defendants contend that Mr. Kinsinger acted in bad faith and failed to mitigate his damages, raising issues of fact. Indeed, Mr. Kinsinger generated his own wage payment problem by sitting for an anonymous interview discussing SmartCore, LLC with a local television station. When the report aired, Mr. Kinsinger boasted to many people that he was the anonymous source. The news report led directly to the SmartCore Defendants' business difficulties and inability to pay wages. (Supplemental Declaration of Steven Matthew Good ((SmartCore Defendants' Exhibit E) ¶¶ 2-3.)

**C.** **Four of Plaintiffs' five ERISA claims fail as a matter of law.**

Four of Plaintiffs' five claims under ERISA fail because Plaintiffs did not exhaust their administrative remedies. As to the claim for denial of benefits (Plaintiffs' Third Claim for Relief)**,** a claimant is required to exhaust the remedies provided by the employee benefit plan in which he or she participates as a prerequisite to an ERISA

action for denial of benefits under 29 U.S.C. § 1132.  This exhaustion requirement rests upon the text and structure of ERISA as well as the strong federal interest in encouraging the private resolution of ERISA disputes.  Makar v. Health Care Corp. of Mid-Atl. (CareFirst), 872 F.2d 80, 82 (4th Cir. 1989).  "Failure to file a request for review within [a plan's] limitations period is one means by which a claimant may fail to exhaust her administrative remedies."  Gayle v. United Parcel Serv., Inc., 401 F.3d 222, 226 (4th Cir. 2005) (quoting Gallegos v. Mt. Sinai Med. Ctr., 210 F.3d 803, 808 (7th Cir. 2000)).

In this case, SmartCore's benefits plan required any denial of benefits to be appealed within 180 days.  (AR 47.)  Additionally, the undisputed evidence shows that Plaintiffs were immediately aware that SmartCore's claims processor, Star Marketing and Administration, Inc. ("Starmark"), had denied coverage for the procedure in question on January 7, 2016, the day before the procedure.  Moreover, Plaintiff Eric Kinsinger sent an e-mail to SmartCore principal Will Winn on February 15, 2016 acknowledging that Starmark had informed him of Starmark's cancellation of SmartCore's coverage, which cancellation necessarily operated as, and was, an automatic denial of the Kinsingers' request for coverage of Mrs. Kinsinger's procedure.  And on February 19, 2016, in a letter to all employees including Plaintiffs, SmartCore informed the employees that Starmark had cancelled its insurance coverage retroactive to January 1, 2016, a week before Mrs. Kinsinger had the procedure in question.  This necessarily meant that the Kinsingers' claim for benefits had been denied, because no insurance coverage for the benefits existed, in turn due to the retroactive cancellation of the insurance coverage – and resulting denial of Plaintiffs' claim – by Starmark.

Additionally, the Administrative Record shows that Starmark – calling itself the "administrator" of the plan – mailed a letter to Eric Kinsinger dated February 17, 2016, showing that Plaintiffs were fully responsible for the entire cost of the Procedure, with an explanation reading "CLAIM IS DENIED DUE TO GROUP'S TERMINATION."  (AR 084.)

All of these events and documents demonstrate that Plaintiffs had actual knowledge that <u>Starmark</u> – not SmartCore or its principals William Winn and Matthew Good – had denied Plaintiffs' claim for benefits to cover the cost of Mrs. Kinsinger's January 8, 2016 medical procedure.

However, despite these events and their resulting actual knowledge of the denial of benefits, <u>Plaintiffs did not file any appeal of the denial of benefits until September 23, 2016, more than 180 days after all of the events imparting actual knowledge of the denial to Plaintiffs</u>. Mr. Kinsinger had actual knowledge of the denial of benefits at least as early as January 7, 2016, which was more than 180 days before the date that Plaintiffs finally lodged an internal appeal of the benefits determination on September 23, 2016,[2] and the additional events of February 2016 described above reinforced that denial and provided Plaintiffs with additional knowledge of the same.

Plaintiffs' Complaint – and their memorandum in support of summary judgment – – attempts to clear this hurdle by stating that <u>SmartCore</u> denied benefits to Plaintiffs in a March 31, 2016 letter (<u>see</u> Second Amended Complaint ¶ 46; AR 85-86; Plaintiffs' Memorandum in support of Plaintiffs' Motion for Summary Judgment, p. 20), but in fact Starmark had already denied Plaintiffs' claim for benefits well before that time, and the March 31, 2016 letter from SmartCore to Plaintiffs <u>says nothing about denying benefits</u>. (<u>See</u> Steven Matthew Good Decl., Exhibit B-3.)  Instead, the March 31 letter was a request for information based on Plaintiffs' assertions, made to SmartCore Defendants through counsel, that <u>Starmark had previously denied Plaintiffs' benefits</u>. Plaintiffs never responded to the letter in any way.

Plaintiffs may not now retroactively claim that the March 31 letter was the denial triggering their 180-day appeal rights period because it fits their timeline, when in fact

---

[2] 180 days before September 23, 2016 was March 27, 2016.

Plaintiffs had actual knowledge of the denial of benefits at least as early as January 7, 2016, and certainly on numerous dates in February of 2016.

In sum, Plaintiffs had actual knowledge that their benefits claim was denied more than 180 days before their September 23, 2016 appeal. Because of Plaintiffs' failure to comply with the plan's requirement that any denial of benefits be appealed within 180 days, they have failed to exhaust their administrative remedies. SmartCore Defendants have argued in their motion for summary judgment that Plaintiffs cannot raise a genuine issue of material fact on the issue of exhaustion of remedies, and that Plaintiffs' claim for denial of benefits in this court fails as a matter of law.

However, even if the Court is not persuaded that SmartCore Defendants are entitled to summary judgment on this issue, SmartCore Defendants have at the very least raised a genuine issue of a material fact precluding summary judgment for Plaintiffs on any of their ERISA-based claims. The Court should receive evidence and testimony at trial concerning whether or not Plaintiffs failed to exhaust their administrative remedies by failing, for whatever reason, to appeal Starmark's denial of benefits until more than 180 days after that denial.

Plaintiffs have also brought a claim for "other appropriate equitable relief" under ERISA's denial of benefits provisions. This claim is a restatement of Plaintiffs' denial of benefits claim, and fails for the same reasons; Plaintiffs failed to exhaust their administrative remedies. In addition, Plaintiffs have pleaded a separate cause of action for attorney fees. While this is a remedy, not a cause of action, to the extent that it derives from Plaintiffs' claims for denial of benefits and "other appropriate equitable relief," it also founders because of Plaintiffs' failure to exhaust their administrative remedies. Like Plaintiffs' claim for denial of benefits, their causes of action for "other appropriate equitable relief" and attorney fees should fail as a matter of law, but if the Court does not grant summary judgment to SmartCore Defendants, SmartCore

Defendants have at the very least raised a genuine issue of material fact for trial, and summary judgment in favor of Plaintiffs on these claims is inappropriate.

Finally, as to Plaintiffs' cause of action for breach of fiduciary duty under ERISA (Plaintiffs' Fourth Claim for Relief), plaintiffs must exhaust administrative remedies before bringing a claim for breach of fiduciary duty in federal court "where the basis of the claim is a plan administrator's denial of benefits or an action by the defendant closely related to the plaintiff's claim for benefits, such as withholding of information regarding the status of benefits. Under those circumstances, it is clear that such a claim is a naked attempt to circumvent the exhaustion requirement." Smith v. Sydnor, 184 F.3d 356, 362 (4th Cir. 1999).

This is precisely the basis for Plaintiffs' claims. Plaintiffs' claim for breach of fiduciary duty simply recasts their claim for denial of benefits. Absent the denial of benefits, Plaintiffs would have no claim for breach of fiduciary duty under ERISA, as the Second Amended Complaint makes clear. See, e.g., SAC ¶85: "The Fiduciary Defendants breached their fiduciary duties to Plaintiffs and other participants and beneficiaries and the Plan by failing to properly fund the Plan; **by failing to use Plan assets for proper purposes under ERISA, including Plan administration and payment of benefits**, but instead directed such amounts to other purposes; and by misrepresenting the amount of benefits available under the Plan" (emphasis added).

Plaintiffs' actual claim for relief is that benefits were denied, which involves the issue of medical necessity and an interpretation of the SmartCore benefits plan. "[A] claim for breach of fiduciary duty is actually a claim for benefits where the resolution of the claim rests upon an interpretation and application of *an ERISA-regulated plan* rather than upon an interpretation and application of *ERISA*." Smith, 184 F.3d at 362 (emphasis in original). As noted above, Plaintiffs failed to exhaust their administrative remedies, and their claims for breach of fiduciary duty and attorney fees also fail as a matter of law. If the Court is not persuaded to grant summary judgment for SmartCore Defendants,

SmartCore Defendants have shown the existence of a genuine issue of triable fact concerning whether or not Plaintiffs failed to exhaust their administrative remedies, and summary judgment for Plaintiffs should be denied.

**D. Plaintiffs have misstated the date of the denial of benefits at issue and failed to seek summary judgment from the parties actually behind that denial.**

Plaintiffs' Memorandum in support of their summary judgment motion addresses at length the question of discretionary denial versus denial subject to de novo review. However, this argument begs the question. SmartCore never denied Plaintiffs' claim for benefits; Starmark did, as early as January 7, 2016 in a telephone call to Eric Kinsinger, a summary of which Mr. Kinsinger supplied to witnesses immediately after the call ended. (Deborah Good Decl. ¶¶ 3-4; Crook Decl. ¶ 3; Winn Decl. ¶ 5.).

The only action that SmartCore took concerning the claim, in response to Plaintiffs' contact with SmartCore occasioned by and concerning <u>Starmark's</u> prior denial of benefits, was to write to Plaintiffs on March 31, 2016, requesting more information in order to evaluate Plaintiffs' claim. Plaintiffs never responded to that correspondence. Accordingly, SmartCore never denied Plaintiffs' claim for benefits; Starmark did so, first on January 7, 2016 by telephone call to Mr. Kinsinger, and again by a document addressed to Mr. Kinsinger on February 17, 2016 (AR 084).

Plaintiffs offer no authority, and SmartCore Defendants have been able to locate none, that a plan sponsor, administrator, or fiduciary is required to respond to repeated requests to approve a claim that has already been denied. Such a rule would necessarily remove all meaning from appeal limitations periods such as the 180-day period contained in the plan at issue here, because a plan participant could simply reactivate any stale claims for benefits by sending a new request for approval.

Moreover, while Plaintiffs attempt to characterize SmartCore's March 31, 2016 letter as a denial of benefits, in fact, the letter says nothing of the kind and contains no

denial whatsoever. (In fact, it requests additional information concerning the claim, but Plaintiffs, for whatever reason, failed to respond to that request.) Because the actual denial of benefits here occurred on January 7, 2016 by Starmark, Plaintiffs' arguments concerning whether SmartCore principals Winn and Good exercised discretion over the denial, whether Winn and Good's actions were reasonable, whether Winn and Good considered medical evidence, whether Winn and Good violated ERISA review requirements, whether Winn and Good were conflicted, et cetera are irrelevant. SmartCore, Winn and Good never denied Plaintiffs' benefits claim; Starmark did.

Plaintiffs' quarrel here is with Starmark. For reasons known only to Starmark, it denied Plaintiffs' claim for benefits on January 7, 2016, the day before Mrs. Kinsinger's scheduled procedure. Plaintiffs proceeded with the procedure anyway, and Mr. Kinsinger told SmartCore colleagues that he expected to incur out-of-pocket costs for what he termed an elective procedure. Plaintiffs could have easily targeted Starmark, a party to this lawsuit, with their motion for summary judgment on Plaintiffs' denial of benefits claims. However, Defendants seek instead to hold SmartCore, Winn and Good responsible for Starmark's decision through an analysis of Winn and Good's actions and the reasonableness thereof, while completely ignoring Starmark's actions altogether. This simply does not show the absence of genuine issues of material fact.[3]

---

[3] Plaintiffs seek summary judgment, but have failed to request remand. "Normally, where the plan administrator has failed to comply with ERISA's procedural guidelines and the plaintiff/participant has preserved his objection to the plan administrator's noncompliance, the proper course of action for the court is remand to the plan administrator for a 'full and fair review.'" Weaver v. Phoenix Home Life Mut. Ins. Co., 990 F.2d 154, 159 (4th Cir. 1993). Here, Starmark denied the claim, and did so while serving as plan administrator, according to its own internal documents shared with Plaintiffs (AR 084).

Whether or not the Court credits SmartCore Defendants' argument that Plaintiffs failed to exhaust their administrative remedies by filing a timely appeal under the benefits plan, summary judgment is improper.

**E.    Plaintiffs have failed to make out a claim for breach of fiduciary duty.**

Plaintiffs' Second Amended Complaint alleges that SmartCore Defendants are liable for a breach of fiduciary duty under 29 U.S.C. §§ 1104, 1109 and 1132. However, the bulk of the SAC's claim for fiduciary breach discusses the actions of Starmark and its corporate affiliates, Trustmark Life Insurance Company and Trustmark Insurance Company. Plaintiffs' summary judgment motion assumes that SmartCore Defendants are liable for a fiduciary breach, but does not explain why, and certainly does not demonstrate the absence of a genuine issue of material fact.

To establish a claim for breach of fiduciary duty under ERISA, a plaintiff must demonstrate that a defendant was a fiduciary of the ERISA plan; that a defendant breached its fiduciary responsibilities under the plan; and that the participant is in need of injunctive or "other appropriate equitable relief" to remedy the breach. Adams v. Brink's Co., 372 F. Supp. 2d 854, 894 (W.D. Va. 2005), citing Blair v. Young Phillips Corp., 235 F.Supp.2d 465, 470 (M.D.N.C. 2002) and Griggs v. E.I. DuPont de Nemours & Co., 237 F.3d 371, 379-80 (4th Cir. 2001).

Moreover, "ERISA does not authorize participants, such as Plaintiffs, to recover personally for losses that the [benefit plan] suffered due to the actions of the fiduciaries." Register v. Cameron & Barkley Co., 467 F. Supp. 2d 519, 528 (D.S.C. 2006); see also Coyne & Delany Co. v. Blue Cross and Blue Shield of Virginia, Inc., 102 F.3d 712, 714 (4th Cir.1996) ("any recovery under [ERISA's breach of fiduciary duty provisions] must be for the plan as a whole rather than for individual beneficiaries"); Meyer v. Berkshire Life Ins. Co., 250 F.Supp.2d 544 (D.Md. 2003), aff'd, 372 F.3d 261 (4th Cir. 2004) (a plaintiff may only obtain money damages for the benefit of the plan for breaches of fiduciary duty under ERISA if she alleges and proves a loss to the plan itself).

Plaintiffs devote scant attention to this cause of action in their motion, summarily declaring that Winn and Good diverted funds from the plan without any record support. Even assuming that Plaintiffs may recover on behalf of the plan, Plaintiffs have not carried their burden on summary judgment to show a breach of fiduciary duty by any of the SmartCore Defendants. Genuine issues of material fact remain.

F. **Plaintiffs' claim for failure to provide plan documents fails.**

As noted above, Plaintiffs' four claims under ERISA for denial of benefits, other equitable relief, attorney fees and breach of fiduciary duty should fail as a matter of law because of Plaintiffs' failure to exhaust their administrative remedies. Alternatively, SmartCore Defendants have raised a genuine issue of material fact as to exhaustion that precludes summary judgment for Plaintiffs.

Plaintiffs' remaining ERISA claim, the sixth claim for relief in their Second Amended Complaint, rests upon an alleged failure to provide plan documents. However, the undisputed facts show that SmartCore provided plan documents to all employees before Plaintiffs' cause of action ever arose, and provided the plan documents again as an attachment to SmartCore' March 31, 2016 letter to Plaintiffs.

Plaintiffs' Second Amended Complaint and their summary judgment motion allege that Plaintiffs requested plan documents in June of 2016, but by that time, SmartCore had already provided the documents to Plaintiffs on March 31, 2016 <u>in response to a prior request</u>. "In order for the statutory penalties in 29 U.S.C. § 1132(c) to apply, [plaintiff] would have to demonstrate that the defendants failed to provide him with documents following his written requests. We agree with the district court that because [plaintiff] cannot show that the defendants failed to respond to his written requests, the defendants were entitled to a grant of summary judgment on those claims." <u>Lopriore v. Raleigh Cardiovascular & Thoracic, Inc.</u>, 28 F. App'x 284, 289 (4th Cir.

16

2002)[4]; see also Perkins v. US Airways, Inc., No. 6:14-CV-2577-BHH, 2017 WL 1196805, at *9 (D.S.C. Mar. 31, 2017), aff'd, 709 F. App'x 188 (4th Cir. 2018), cert. denied sub nom. Perkins v. U.S. Airways, Inc., 139 S. Ct. 265 (2018). In Perkins, the court rejected plaintiff's "faulty premise that ERISA requires plan administrators to provide participants with copies of the same plan documents over and over again, regardless of how many times a participant has already requested and received those documents, and regardless of whether the participant's subsequent requests specifically identify the documents needed or explain the purported need for repeat copies." The court awarded summary judgment to defendants based on their prior provision of plan documents.

Additionally, in order for Plaintiffs to garner an award under the penalty provisions of ERISA relating to requests for plan documents, the Court may consider whether Plaintiffs suffered any prejudice and whether the plan sponsor or administrator acted in bad faith. Carroll v. Cont'l Auto., Inc., No. 3:13CV693, 2015 WL 9942622, at *7 (W.D.N.C. Aug. 31, 2015), report and recommendation adopted, No. 3:13CV693, 2016 WL 347699 (W.D.N.C. Jan. 28, 2016), aff'd, 685 F. App'x 272 (4th Cir. 2017). Plaintiffs have provided no evidence of bad faith conduct on the part of SmartCore Defendants, nor have they shown any prejudice.

Here, the undisputed facts show that SmartCore Defendants provided Plaintiffs with plan documents in, at the latest, March of 2016 in response to Plaintiffs' request. There is no genuine issue of material fact as to whether or not SmartCore Defendants

---

[4] In accordance with Local Rule 32.1 of the United States Court of Appeals for the Fourth Circuit and Rule 32.1(b) of the Federal Rules of Appellate Procedure, the SmartCore Defendants respectfully cite to this unpublished decision, which is available on publicly accessible electronic legal research databases including Westlaw, because they believe it has precedential value in relation to a material issue in this case and there is no published opinion that would serve as well.

provided plan documents,[5] and summary judgment on this cause of action in favor of SmartCore Defendants is appropriate. If the Court is not persuaded to award summary judgment to SmartCore Defendants, it should find the existence of a genuine issue of material fact for trial, precluding summary judgment in favor of Plaintiffs.

### G. Plaintiffs are not entitled to attorney fees.

Fourth Circuit courts apply a five-factor test in ERISA actions to determine whether to award attorney fees in their discretion. <u>Quesinberry v. Life Ins. Co. of North America</u>, 987 F.2d 1017, 1029 (4th Cir. 1993) (affirming the district court's decision not to award attorney's fees in its discretion). These factors are: (1) the degree of opposing parties' culpability or bad faith; (2) the ability of opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions. <u>Id</u>.

In this case, Plaintiffs have not demonstrated bad faith on the part of SmartCore Defendants, nor have they submitted any evidence of those defendants' ability to pay an award. Given that Plaintiffs ignored SmartCore Defendants' efforts in March of 2016 to explore why Starmark denied Plaintiffs' benefits claim, only to be ignored completely by Plaintiffs, the third factor, deterrence, should be neutral or weigh against a fee award.

---

[5] Plaintiffs attempt to bolster their claims for failure to provide plan documents by pointing to letters Plaintiffs and their counsel sent to SmartCore in June of 2016 (AR 87-88; 89). The first letter, from Plaintiffs' counsel, does not request any plan documents; it requests notes and correspondence related to the Plaintiffs' claim for benefits. The second letter, by Mr. Kinsinger, requests documents that SmartCore Defendants had already provided to Plaintiffs or did not exist. (Supp. Steven Matthew Good Decl. ¶¶ 5-6.) <u>See</u> <u>Faircloth v. Lundy Packing Co.</u>, 91 F.3d 648, 654 (4th Cir. 1996) (the obligation to provide plan documents is limited to "instruments under which the plan is established or operated"). Defendants had already provided all such documents to Plaintiffs.

There is no evidence that Plaintiffs sought to vindicate the rights of any other beneficiaries of the SmartCore plan or intended to resolve a novel or significant legal question under ERISA, and SmartCore Defendants submit that their position set forth in their summary judgment motion is at least as meritorious as Plaintiffs' claims. Attorney fees are not warranted and the Court should decline to award them.

## III.    CONCLUSION

For the foregoing reasons, SmartCore Defendants respectfully request that the Court deny summary judgment for Plaintiffs on Plaintiffs' five ERISA-based claims, grant SmartCore Defendants' cross-motion for summary judgment on those claims, and dismiss Plaintiff Eric Kinsinger's remaining two state law claims (for unpaid wages and breach of contract) for lack of supplemental jurisdiction.

Dated:   January 16, 2019                   Respectfully submitted,
                                            **/s/ Matthew J. Norris**
                                            Matthew J. Norris
                                            N.C. State Bar No. 26978
                                            mjnorris@norrislglaw.com
                                            Norris Law Group, P.C.
                                            10940 Wilshire Boulevard, Suite 1600
                                            Los Angeles, CA 90024
                                            (310) 443-4159
                                            (310) 443-4220 (facsimile)

                                            Attorneys for Defendants SmartCore
                                            LLC, SmartCore Electrical LLC,
                                            SmartCore Electrical Services, LLC,
                                            SmartCore, LLC Group Health Benefit
                                            Plan, Steven Matthew Good, and William
                                            H. Winn, Jr.

                                            **s/ M. Heath Gilbert, Jr.**
                                            Baucom, Claytor, Benton, Morgan and
                                            Wood, PA
                                            200 Providence Road, Suite 106
                                            Charlotte, NC 28204
                                            704-376-6527
                                            Fax: 704-376-6207
                                            Email: hgilbert@baucomclaytor.com

19

## CERTIFICATE OF COMPLIANCE WITH WORD LIMIT

I hereby certify that this brief complies with the Court's word limit for dispositive motions because it contains 5,939 words, based on the word count generated by the word processing software (Microsoft Word 2013) used to prepare the document. The Court's word limit for memoranda of law in opposition to dispositive motions, set forth in the Case Management Order (Jury Trial) of the Honorable District Judge, Paragraph 3(c)(ii), is 6,000 words.


Dated: January 16, 2019

**/s/ Matthew J. Norris**
Matthew J. Norris
N.C. State Bar No. 26978
mjnorris@norrislglaw.com
Norris Law Group, P.C.
10940 Wilshire Boulevard, Suite 1600
Los Angeles, CA 90024
(310) 443-4159
(310) 443-4220 (facsimile)

Attorneys for Defendants SmartCore
LLC, SmartCore Electrical LLC,
SmartCore Electrical Services, LLC,
SmartCore, LLC Group Health Benefit
Plan, Steven Matthew Good, and William
H. Winn, Jr.

## CERTIFICATE OF SERVICE

I hereby certify that on January 16, 2019, a copy of foregoing document was served via U.S. Mail on the following party:

Jared Crafton Crook
300 S. Firestone Street
Apartment 420
Gastonia, NC 28052
**DEFENDANT PRO SE**

Dated:   January 16, 2019                    **/s/ Matthew J. Norris**
                                             Matthew J. Norris
                                             N.C. State Bar No. 26978
                                             mjnorris@norrislglaw.com
                                             Norris Law Group, P.C.
                                             10940 Wilshire Boulevard, Suite 1600
                                             Los Angeles, CA 90024
                                             (310) 443-4159
                                             (310) 443-4220 (facsimile)

                                             Attorneys for Defendants SmartCore
                                             LLC, SmartCore Electrical LLC,
                                             SmartCore Electrical Services, LLC,
                                             SmartCore, LLC Group Health Benefit
                                             Plan, Steven Matthew Good, and William
                                             H. Winn, Jr.