| | | |
|---|---|---|
| ERIC KINSINGER and<br>DENISE KINSINGER,<br><br>    Plaintiffs,<br><br>vs.<br><br>SMARTCORE, LLC;<br>SMARTCORE ELECTRIC, LLC;<br>SMARTCORE ELECTRICAL SERVICES;<br>SMARTCORE, LLC GROUP HEALTH,<br>BENEFIT PLAN; STEVEN MATTHEW<br>GOOD and WILLIAM H. WINN JR.,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | ORDER |

THIS MATTER is before the Court following a bench trial held before the undersigned on June 4, 2019. Plaintiffs, Eric Kinsinger and Denise Kinsinger, brought seven claims for relief: (1) failure to pay wages under the North Carolina Wage and Hour Act, (2) breach of contract, (3) wrongful denial of benefits under ERISA, (4) breach of fiduciary duty under ERISA, (5) legal and equitable relief on account of breach of fiduciary duty, (6) statutory penalties under ERISA § 502 for failure to provide documents, and (7) attorney's fees, interest and such other relief as proper under ERISA and North Carolina Law. (See generally Doc. No. 33). Pursuant to Rule 52(a)(1) of the Federal Rules of Civil Procedure, the following constitutes the Court's findings of fact and conclusions of law.

# I. Findings of Fact

The Court makes the following factual findings based upon the testimony of Eric Kinsinger at trial, Plaintiff's trial exhibits, and undisputed facts submitted by the parties. The Court notes that in preparation for trial, parties submitted extensive stipulations of fact.[1]

## A. The Parties

1.    William H. Winn Jr. ("Winn") was President of SmartCore, LLC ("SmartCore"). (Doc. No. 109, p. 3).

2.    Steven Matthew Good ("Good") was a principal of SmartCore. Id.

3.    Good and Winn were the only members (owners) of SmartCore, were its sole managers, and controlled all management, operational, and employment aspects of SmartCore. Id. at 3–4.

4.    Good and Winn hired employees of SmartCore, including Eric Kinsinger, who was hired as a full-time employee of SmartCore in October 2014. Id. at 4.

5.    Good and Winn bargained with, and set terms and conditions of employment, for employees of SmartCore. Id.

6.    Good and Winn made the decision for SmartCore to cease active business activities. Id.

## B. Plan Organization and Funding

7.    SmartCore adopted a group health plan that provided payment for major medical benefits called the SmartCore, LLC Group Health Plan ("Plan") on December 18, 2015, with an effective date of December 1, 2015. Id.; (Pl. Ex. A-I, p. 1).

---

[1] Although Defendant Good did not participate in these submissions of fact to the Court, the Court ruled that Good was nonetheless bound by them as sanctions for his pretrial conduct. (Doc. No. 115, p. 3). When Good appeared at the bench trial, he further indicated that he was not opposed to the parties' pretrial stipulations.

8.     SmartCore was the Plan Sponsor and Plan Administrator.  (Doc. No. 109, p. 3).  Under the plan, SmartCore, would evaluate the costs of the Plan based on projected Plan expenses and would determine the amount to be contributed by the covered employees.  (Pl. Ex. A-I, p. 9); (Pl. Ex. B, p. 8).  The contributions received from "Eligible Employees" were to be used to cover Plan costs. (Pl. Ex. A-I, p. 9); (Pl. Ex. B, p. 8).  SmartCore was to pay "Plan benefits and administration expenses directly from [SmartCore's] general assets."  (Doc. No. 109, p. 4); (Pl. Ex. A-I, p. 6).

9.     SmartCore withheld wages from Plaintiff and other employees to cover the costs of the Plan.  (Doc. No. 109, p. 6); (See Pl. Ex. G).

10.    SmartCore entered into an administrative services agreement with Starmark, Inc. ("Starmark").  As the initial claims fiduciary for the Plan, Starmark determined eligibility benefits under the Plan.  (Doc. No. 109, p. 4); (Pl. Ex. B., p. 2).

11.    SmartCore also purchased stop-loss insurance from Trustmark Life Insurance Company ("Trustmark").  Under that agreement, Trustmark reimbursed SmartCore for a certain portion of the "reasonable and customary fee actually paid by [SmartCore] for eligible benefits under the Plan" in exchange for monthly premiums.    (Doc. No. 109, p. 4); see also (Pl. Ex. C) ("The Employer [SmartCore] is entitled to the reimbursement determined in this Contract if the Employer is eligible for insurance under the provision of this Contract.").

12.    SmartCore agreed to pay Trustmark monthly premiums for (1) Trustmark's stop-loss insurance policy, (2) benefits paid under the plan administered by Starmark, and (3) Starmark's services (collectively, "Health Plan Expenses").  (Doc. No. 109, p. 4–5); (Pl. Ex. B, p. 5); (Pl. Ex. C, p. 4).

13.     SmartCore, LLC, under the direction of Defendants Good and Winn, stopped paying the premiums necessary to fund the Health Plan Expenses and benefits.  (Doc. No. 109, p. 6).  SmartCore, Good, and Winn instead used their employee's withholdings for other purposes.  Id.

14.     On or about February 5, 2016, Starmark notified SmartCore it was cancelling the stop-loss insurance and its administrative services contract with SmartCore because SmartCore failed to make payments as required for Health Care Expenses.  Id.; (Pl. Ex. E).

**C.      Plan Participants**

15.     Eric Kinsinger was a participant in the Plan because of his employment with SmartCore.  (Doc. No. 109, p. 5).

16.     Denise Kinsinger was a participant in the Plan as a dependent of her husband, Eric.  Id.

17.     Eric and Denise Kinsinger were covered under the "Plan" from its effective date of December 1, 2015, until Eric Kinsinger's resignation on or about February 29, 2016.  Id.

18.     As of December 31, 2015, there were eighty-nine participants in the plan, fifty-seven of whom were employees while thirty-two of whom were dependents of employee participants.  Id.; (Pl. Ex. D).

**D.      Medical Treatment Incurred by Denise and Medical Necessity**

19.     On December 9, 2015, Dr. Pillai diagnosed Denise with Menorrhagia and Adenomyosis, and recommended she be treated with a hysterectomy.  (Doc. No. 109, p. 5); (Pl. Ex. Q, p. 11–16).

20.     Starmark, acting on behalf of the Plan, had Dr. Matthew Zawelinski, review Denise's claim.  (Doc. No. 109, p. 5).  Dr. Zawelinski determined that the procedure was medically necessary and eligible for benefits under the Plan.  Id.; (Pl. Ex. O, p. 22).

21.     On January 8, 2016, Starmark granted pre-authorization for the procedure and notified Denise, Eric, and Carolina Healthcare System ("CHS") of their decision.  (Doc. No. 109, p. 6); (Pl. Ex. A-iii).

22.     On that same date, Denise received the hysterectomy.  (Doc. No. 109, p. 6).

23.     On or about January 21, 2016, CHS billed the Plan $39,931.45 for the hysterectomy and related treatment.  Id.; (Pl. Ex. F).  The Plan did not pay the bill.  (Doc. No. 109, p. 7).

**E.      SmartCore's handling of Plaintiffs' Medical Claim**

24.     On February 19, 2016, SmartCore sent a letter to Eric Kinsinger, regarding "Cancellation of Medical Insurance Policy."  Id.  The letter stated: "As you may know, our insurance was cancelled effective 1/1/2016 for non-payment.  We were not made aware of this until 2/8/2016. We have made every effort to secure the funds to reinstate the insurance; however, at this time, we have not been able to do so."  Id.  The letter did not provide information specific to Plaintiffs' claim, nor did it indicate whether the claim was denied.  (Pl. Ex. J).

25.     At the end of February, SmartCore sent an undated letter to Eric Kinsinger and other participants, stating, "SmartCore intends to pay for any medical expense or benefit under the Medical Plan for which the services were provided between January 1, 2016 and February 29, 2016.  (Pl. Ex. K).

26.     On March 31, 2016, SmartCore's Benefits Committee sent a letter to Eric wherein it identified itself as the Plan Administrator.  (Pl. Ex. A-vii).

27.     The Benefits Committee consisted of Good and Winn.  (Doc. No. 109, p. 7).  Good and Winn were jointly the Plan Administrator on and after March 31, 2016 and were responsible for both evaluating and paying claims under the Plan.  Id. at 7.

28.     The March 31 letter stated, "[t]he Benefit Committee believes that the surgery provided . . . to the Plan Participant [(Denise)], was not pre-certified as required under the Plan.".  (Pl. Ex. A-vii).  The Committee then requested Plaintiffs to provide "information required for pre-certification" before it rendered a final decision.  Id.

29.     On June 3, 2016, Eric Kinsinger, through counsel, wrote the Benefits Committee and requested documents for the Plan.  (Doc. No. 109, p. 8); (Pl. Ex. A-ix).

30.     Specifically, Eric Kinsinger requested the following documents in writing:

- The plan document (including any insurance policy/contract),
- The latest updated SPD,
- The latest annual report,
- The trust agreement,
- Any contracts with medical providers or vocational analysts providing services to the Plan, and
- Any other instruments under which the company health benefit plan is established or operated.

(Doc. No. 109, p. 8); (Pl. Ex. A-ix).

31.     The plan document, summary plan description, insurance contract (between Trustmark and SmartCore), and Administrative Services Agreement (between SmartCore and Starmark) govern and establish the Plan.  (Doc. No. 109, p. 8).

32.     Good and Winn, as the sole Benefits Committee members, received the request on June 7, 2016, and neither responded to Eric Kinsinger's written request for documents.  Id.; (Pl. Ex. L).

33.     Good and Winn ultimately provided a copy of the Plan document, SPD, and Starmark[2] Administrative Services Agreement on July 25, 2018 in response to Plaintiffs' discovery requests

---

[2] Plaintiffs' Proposed Findings of Fact and Conclusions of Law claims the parties stipulated Defendants provided a copy of the "*Trustmark* Administrative Services Agreement."  (Doc. No. 110, p. 10). However, with reference to Plaintiffs' Exhibit B which refers to the ASA as the "*Starmark* Administrative Services Agreement," the Court believes the parties intended to stipulate that Defendants Good and Winn, provided a copy of the *Starmark* Administrative Services Agreement on July 25, 2018.

in this litigation. They did not provide a copy of the applicable stop-loss insurance contract from Trustmark.  (Doc. No. 109, p. 8).

34.     Plaintiffs' medical claim was never formally denied in a manner that comported with the requirements of ERISA.  (See Doc. No. 80, p. 9 (listing the actions that Defendants contend were effective denials of Plaintiffs' claim, including: an email Eric Kinsinger himself sent and an unsubstantiated phone call the day before the procedure that was controverted by the pre-authorization letter)); 29 C.F.R. § 2560.503-1(g) (requiring a denial to be in writing and to state, among other things: "[t]he specific reason or reasons for the adverse determination," and "reference to the specific plan provisions on which the determination is based").

35.     On or about September 23, 2016, Plaintiffs submitted an appeal to the Benefits Committee. (Doc. No. 109, p. 7); (Pl. Ex. A-x).

36.     Good and Winn did not have a medical doctor review Denise's medical information or claim for benefits.  (Doc. No. 109, p. 8).  Good and Winn did not respond to Plaintiffs' appeal.  Id.

**F.     State Court Suit Against Plaintiffs**

37.     Around June 2016, Eric received a $39,031.45 bill from CHS with an account balance of $18,965 due after adjustments.  (Pl. Ex. M).

38.     After nonpayment, CHS filed suit against Eric.  (Rough Trial Tr., June 4, 2019).

39.     When the parties appeared before the Court on June 4, 2019, this suit was still outstanding. Id.

## II. CONCLUSIONS OF LAW

**A.      Counts I and II: Plaintiffs' North Carolina Wage and Hour and Breach of Contract Claims**

At summary judgment, Defendants, through counsel, conceded that they violated North Carolina Wage and Hour Act and that they owed Plaintiff Eric Kinsinger $6,250 in unpaid wages plus additional statutory interest.   (Doc. No. 86, p. 1).   Defendants further conceded that the damages should be doubled under N.C. Gen. Stat. § 95-25.22.   Because Defendants conceded, by way of counsel, that these liquidated damages are appropriate, the Court will not make any additional findings of fact as to these amounts.

Defendants SmartCore, Good, and Winn, are jointly and severally liable to Eric Kinsinger for these damages.   Good and Winn, as managers and principal owners of the corporate entities, are "employers" as defined in the N.C. Wage and Hour Act and may be subject to individual liability.   See N.C. Gen. Stat. § 95-25.2(a1) (defining employer as "includ[ing] any person acting directly or indirectly in the interest of an employer in relation to an employee"; see also Powell v. P2Enterprises, LLC, 786 S.E.2d 798, 801 (N.C. Ct. App. 2016) (holding that individuals may be held liable for unpaid wages when they have "sufficient operational control over the workers in question and the allegedly violative actions").

Plaintiffs' breach of contract claim (Count II) was pled in the alternative to Plaintiff's Wage and Hour Act claim.   Because Plaintiffs have prevailed on the Wage and Hour Act claim, Plaintiffs' breach of contract claim is rendered moot.

**B.     Count III: Wrongful Denial of Benefits**

ERISA allows a participant in a covered plan to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132 (a)(1)(B).  Pursuant to the Consent Judgment entered by the Court on June 4, 2019, all parties consented to Judgment in favor of Plaintiffs on Plaintiffs' claim of wrongful denial of benefits under ERISA, 29 U.S.C. § 1132(a)(1)(B), and the Court incorporates this Judgment by reference.  (Doc. No. 116).

The remaining issue for the Court to determine with respect to this claim is whether Plaintiffs can recover prejudgment interest on the denied benefits.[3]  The Fourth Circuit has maintained that "ERISA does not specifically provide for pre-judgment interest, and absent a statutory mandate the award of pre-judgment interest is discretionary with the trial court." Quesinberry v. Life Ins. Co. of N. Am., 987 F.2d 1017, 1030 (4th Cir. 1993) (en banc) (citing Whitfield v. Lindemann, 853 F.2d 1298, 1306 (5th Cir.1988), cert. denied, 490 U.S. 1089 (1989)). "The essential rationale for awarding prejudgment interest is to ensure that an injured party is fully compensated for its loss."  City of Milwaukee v. Cement Div., Nat'l Gypsum Co., 515 U.S. 189, 195 (1995).

The Court finds that Plaintiffs are entitled to pre-judgment interest with regards to their Wrongful Denial of Benefits Claim.  Plaintiff's hysterectomy occurred on January 8, 2016 and a judgment was not entered in favor of Plaintiff for the wrongful denial of benefits until June 4, 2019.  Starmark granted preauthorization for the treatment on January 8, 2016 after Dr. Zawelinski determined the procedure was medically necessary, yet Defendants provided no good faith basis

---

[3] The Court will determine whether Plaintiffs are entitled to reasonable attorney's fees and costs from this claim as part of its discussion of Count VII of Plaintiffs' amended complaint.

for not paying the claim.  Defendants never consulted a medical professional for an opinion on the medical necessity of Plaintiff's claim and failed to ever respond to Plaintiff's appeal on September 23, 2016.  Furthermore, the Plan is a separate legal entity, see 29 U.S.C. § 1132(d)(1), and termination of the stop-loss insurance by Starmark had no effect on the Plan's existence or its responsibilities to participants. See Thompson v. Talquin Bldg. Prods. Co., 928 F.2d 649, 653 (4th Cir. 1991) ("Even with the stop-loss coverage, [the ERISA] Plan is directly liable to . . . employees for any amount of benefits owed to them under the Plan's provisions.").  The Administrative Services Agreement ("ASA") between Starmark and SmartCore expressly provided that in the event of termination, Defendants were to continue funding "claims incurred before the [ASA] termination . . . until such claims are finally resolved."  (Pl. Ex. B, §7.4.B.).  In short, these benefits should have been paid and Defendants' positions throughout this litigation for why the benefits were not paid were untenable.

Though Defendant Winn stated at trial that he personally paid the balance on Plaintiff's medical claim on the day before trial, any payments made more than three years later do not fully compensate Plaintiffs.  Furthermore, because of the time value of money, denying prejudgment interest would create a windfall for Defendants by allowing Defendants to use the money that should have been paid, interest free, for three years.  See In re Oil Spill by the Amoco Cadiz, 954 F.2d 1279, 1331 (7th Cir.1992) ("Money today is not a full substitute for the same sum that should have been paid years ago.  Prejudgment interest therefore is an ordinary part of any award under federal law.").  The Court declines to create a perverse incentive for ERISA fiduciaries to delay paying appropriate benefits to beneficiaries on time.

The Court must next determine the date that prejudgment interest began accruing.  In light of the evidence presented, the Court finds the date which the Plaintiff's medical treatment should have been paid for under the Plan to be the appropriate starting date for accrual of prejudgment interest.  This determination parallels other decisions by district courts in the Fourth Circuit regarding the starting date for prejudgment interest accrual.  See Feldman's Med. Ctr. Pharmacy, Inc. v. CareFirst, Inc., 823 F. Supp. 2d 307, 311 (D. Md. 2011) (finding "prejudgment interest shall accrue from the 31st day after each individual claim was received by [the plan administrator] until paid"); Am. Tel. & Tel. Co. v. Jiffy Lube Int'l, Inc., 813 F. Supp. 1164, 1171 (D. Md. 1993) ("[P]rejudgment interest shall run from . . . the date payment for the charges became due.").

The initial claims administrator, Starmark, received a bill for Plaintiff's medical treatment on January 2l, 2016, (Pl. Ex. F, p. 1), and Plaintiff received a bill on February 17, 2016 for the medical treatment with the bill explaining the claim "[was] denied due to group[']s termination." Id. at 3.  Therefore, by the time Plaintiff received the bill from CHS on February 17, 2016, the claim should have been paid by the Plan and prejudgment interest should accrue from this date. The Court finds all Defendants jointly and severally liable to Plaintiffs for prejudgment interest at a rate of eight percent, with pre-judgment interest accruing from February 17, 2016 through the date of the Consent Judgment, June 4, 2019.

Plaintiffs are entitled to prejudgment interest at a rate of eight percent as provided in N.C. Gen. Stat. § 24-1.  "[T]he rate of pre-judgment interest for cases involving federal questions is a matter left to the discretion of the district court."  Quesinberry, 987 F.2d at 1031 (citing United States v. Dollar Rent A Car Systems, Inc., 712 F.2d 938, 940 (4th Cir.1983)) (emphasis added). In this case, the Court will apply the pre-judgment interest rate of eight percent as set by North

Carolina state law. See id. (affirming the district court's application of the state statutory judgment interest); see also Montero v. Bank of America Long-Term Disability Plan, 3:15-cv-519-RJC-DSC, 2016 WL 7444957, at *7 (W.D.N.C. Dec. 27, 2016) ("In determining the appropriate prejudgment interest rate, courts should look to the state statutory interest rate.").

## C. Count IV: Breach of Fiduciary Duty Under ERISA

ERISA provides that "[a] civil action may be brought…by a participant…for appropriate relief under section 1109 of this title." 29 U.S.C. § 1132(2). 29 U.S.C. § 1109 provides that an ERISA fiduciary who breaches his duties "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach . . . and shall be subject to such other equitable or remedial relief as the court may deem appropriate." 29 U.S.C. § 1109. No administrative exhaustion requirements apply to an ERISA fiduciary breach claim. See, e.g., Smith v. Sydnor, 184 F.3d 356, 365 (4th Cir. 1999) ("[W]e hold that the judicially created exhaustion requirement does not apply to a claim for breach of fiduciary duty as defined in ERISA.").

Matthew Good and William Winn are fiduciaries within the meaning of 29 U.S.C. § 1002(21)(A) because:

a. they exercised discretionary authority and discretionary control respecting management of the Plan by communicating with participants, undertaking responsibility to review and decide Plan claims, and directing the use of assets of the Plan;

b. they exercised authority and control respecting management and disposition of the assets of the Plan in the form of participant contributions by directing that they not be paid for Health Plan Expenses and instead be used for other purposes;

12

 

     c.     they had discretionary authority and discretionary responsibility in the administration of the Plan by virtue of being the plan administrator of the Plan (within the meaning of 29 U.S.C. § 1002(16)(A)).

(Doc. No. 109, p. 11). Therefore, as fiduciaries, Defendants Good and Winn may be held liable under 29 U.S.C. § 1109.

Good and Winn breached their fiduciary duties when they failed to pay money withheld from Plan participants' paychecks to the Plan for Health Plan Expenses and instead used the withheld contributions for other purposes. Monies withheld from participants' paychecks for the purpose of Health Care Expenses were clearly assets of the Plan, within the meaning of 29 U.S.C. §1002(42) and 29 C.F.R. §2510.3-102(a)(1). (Doc. No. 109, p. 11). Misappropriating participant contributions and using them for any other purpose (including corporate purposes) is a clear fiduciary duty breach. See Phelps v. C.T Enterprises, Inc., 194 F. App'x 120, 124 (4th Cir. 2006) ("[F]unds withheld as employee contributions to a plan cannot be used by an employer for any purpose other than funding the plan."); see also Varity v. Howe, 516 U.S. 489, 506 (1996) ("To participate knowingly and significantly in deceiving a plan's beneficiaries in order to save the employer money at the beneficiaries' expense, is not to act solely in the interest of the participants and beneficiaries."); DiFelice v. U.S. Airways, Inc., 497 F.3d 410, 418–19 (4th Cir. 2007) ("Fiduciaries must also scrupulously adhere to a duty of loyalty, and make any decisions in a fiduciary capacity with 'an eye single to the interests of the participants and beneficiaries.'").

Judgment is therefore entered in favor of Plaintiffs, on behalf of the Plan, on Count IV of their complaint for breach of fiduciary duty under 29 U.S.C. §1132(a)(2). Pursuant to that statute, judgment is imposed, jointly and severally, against Defendants/fiduciaries Smartcore, Good, and

Winn in the amount of all monies withheld from Plan participants' paychecks that has not been paid to the Plan for Health Care and Defendants are hereby ordered to restore all such monies to the Plan. Defendants are hereby ordered to make restitution to Plan participants and/or beneficiaries in accordance with the Consent Judgment and Order entered in the related action, Acosta v. Good, et al, 3:19-cv-119-FDW-DCK, Doc. No. 22 (W.D.N.C. Filed Aug. 19, 2019).

**D.      Count V: Legal and Equitable Relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3)**

Plaintiffs' claims for other appropriate equitable relief under ERISA §502(a)(3), 29 U.S.C. § 1132(a)(3), are plead in the alternative to their wrongful denial of benefits and breach of fiduciary duty claims. Because the Court finds in Plaintiffs' favor with respect to those claims, this claim is rendered moot.

**E.      Count VI: Statutory Penalties Under ERISA §502 for Failure to Provide Documents**

29 U.S.C. § 1024(b)(4), provides:

> [t]he administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.

29 U.S.C. § 1024(b)(4). Under ERISA, an "administrator" is defined as:

> [1)] the person specifically so designated by the terms of the instrument under which the plan is operated; [2)] if an administrator is not so designated, the plan sponsor; or [3)] in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may be regulation prescribe.

U.S.C. § 1002(16)(A).

SmartCore was the named administrator of the plan under the Summary Plan Description, (Pl. Ex. A, p. 5); however, parties have stipulated that Good and Winn jointly became the Plan

Administrator on March 31, 2016. (Doc. No. 110, p. 9). Good and Winn therefore had the duty under 29 U.S.C. § 1024(b)(4) to provide requested documents in June 2016.

The (1) plan document, (2) the SPD, (3) insurance contract between Trustmark and SmartCore, and (4) the Administrative Services Agreement between SmartCore and Starmark were the documents that established and governed the Plan. (Doc. No. 109, p. 8). Thus, such documents should have been turned over upon request. See 29 U.S.C. § 1024(b)(4). However, contrary to Plaintiffs' arguments, the administrative record is not covered under 29 U.S.C. § 1024(b)(4). See Faircloth v. Lundy Packing Co., 91 F.3d 648, 654 (4th Cir. 1996) (holding that the duty to disclose documents under 29 U.S.C. § 1024(b)(4) "encompasses only formal or legal documents under which a plan is set up or managed").

Plaintiffs' writing to the Benefits Committee on June 3, 2016 requesting the above four documents, along with "any other instruments under which the company health benefit plan is established or operated.,"[4] was sufficient to trigger Good and Winn's obligations to produce the four aforementioned documents. "[A] request for documents . . . necessitates a response from an administrator when it gives the administrator 'clear notice' of the information sought." Faircloth, 91 F.3d at 655 (citing Anderson v. Flexel, Inc., 47 F.3d 243, 248 (7th Cir.1995)); see also Bartling v. Fruehauf Corp., 29 F.3d 1062, 1071 (6th Cir. 1994) ("[The writing] so obviously contains the information that Plaintiffs expressly described when they requested . . . that Defendants either knew or should have known that they were obliged to furnish it in response to Plaintiffs' request.").

---

[4] Plaintiff's writing on June 3, 2016 requested: (1) the plan document (including any insurance policy/contract), (2) the latest updated SPD (3) the latest annual report, (4) the trust agreement, (5) any contracts with medical providers or vocational analysts providing services to the Plan, and (6) any other instruments under which the company health benefit plan is established or operated. (Doc. No. 110, p. 10); (Pl. Ex. A-ix).

Defendants argue they fulfilled their obligations under 29 U.S.C. § 1024(b)(4) because they had previously turned over plan documents in their March 31, 2016 letter. (Doc. No. 72-1, p. 11–12); (Doc. No. 109, p. 3). The March 31, 2016 letter stated, "[a] copy of the Summary Plan Description is included with this letter," but it is unclear to the Court whether the SPD was in fact included. (See Pl. Ex. A-vii). Regardless, no language within 29 U.S.C. § 1024(b)(4) or § 1132(c)(1)(B) absolves an administrator from their duty to respond to requests for documents because they previously provided participants the documents requested. Furthermore, "[w]hen there is some doubt about whether a claimant is entitled to the information requested, the Supreme Court has suggested that an administrator should err on the side of caution." Davis v. Featherstone, 97 F.3d 734, 738 (4th Cir. 1996). Even if Defendants had already provided the SPD, Good and Winn were still obligated as Plan Administrator to respond to Plaintiffs request and produce the other governing documents. Therefore, the Court finds that Defendants Good and Winn violated 29 U.S.C. § 1132(c)(1)(B) by failing to respond to Plaintiff's request within thirty days.

Application of statutory penalties under ERISA for a plan administrator's failure to produce documents is in the district court's discretion. "Two factors generally guide [this] discretion: [(1)] prejudice to the plaintiff and [(2)] the nature of the administrator's conduct in responding to the participant's request for plan documents." Mullins v. AT&T Corp., 424 F. App'x 217, 225–26 (4th Cir. 2011) (citation and internal quotations omitted). Importantly, because the purpose of the civil penalty is to "not to compensate participants for injuries, but to punish noncompliance with ERISA," Faircloth, 91 F.3d at 659, courts do not need to find the existence of prejudice or bad faith to impose penalties under § 1132(c)(1)(B). See Carroll v. Cont'l Auto., Inc., 685 F. App'x. 272, 276–77 (4th Cir. 2017) ("Although findings of prejudice and bad faith

may be relevant to a penalty determination, courts analyzing ERISA do not condition the imposition of penalties on the existence of such findings.").

An administrator who fails to produce required documents may be subject to a monetary penalty, in the Court's discretion, of up to $110.00/day.  29 U.S.C. § 1132(c)(1)(B); 29 C.F.R. § 2575.502c-1 (raising penalty for violations from $100.00/day to $110.00/day).  Defendants provided Plaintiffs a copy of the plan document, SPD, and Starmark Administrative Services Agreement on July 25, 2018; 748 days[5] after the thirty-day period for SmartCore to respond to Plaintiff's request received on June 7, 2016.  The stop-loss insurance contract with Trustmark was never provided.

Plaintiffs were substantially prejudiced as a result of Good and Winn's failure to provide the requested documents.  Plaintiffs were essentially left in the dark as to how to appeal the Benefits Committee's refusal to pay Plaintiff's claim.  Good and Winn's failure to provide the documents also frustrated Plaintiffs' ability to litigate the present case as essential facts were contained within these documents.  For example, Defendants, in their joint answer, denied that "SmartCore was listed as the Plan Sponsor and Plan Administrator for the Plan."  (Doc. No. 33, p. 5, ¶21); (Doc. No. 39, p. 3, ¶21).  This information would have been virtually impossible to deny if Plaintiffs had possession of the Summary Plan Description, which states explicitly that SmartCore, LLC was the Plan Sponsor and the Plan Administrator.  (Pl. Ex. A, p. 5).  Defendants, in responding to Plaintiffs' Complaint attempted to put the blame solely on Starmark.  (See Doc.

---

[5] Plaintiffs' Proposed Findings of Fact and Conclusion of Law claims, "[s]even hundred and forty-six days passed between the date that Good and Winn received Eric's request for plan documents and the date they provided a copy of the Plan document, summary plan description, and Trustmark ASA, which only occurred during the discovery process during this litigation." (Doc. No. 110, p. 20). Using the stipulated date for receipt of request, June 7, 2016, and the stipulated date of delivery of the aforementioned documents, July 25, 2018, the Court finds that the number of days between these dates to be 778 days.

No. 39, p. 3 (admitting that "Defendant Starmark had obligations and duties to Plaintiffs" while denying their own obligations)). However, the Starmark ASA explicitly stated that SmartCore remained the primary fiduciary under ERISA, and that Starmark only undertook fiduciary responsibility "with respect to the processing and adjudication of benefit claims and appeals." (Pl. Ex. B, p. 2). Defendants' willingness to exploit Plaintiffs' lack of these documents in litigation is indicative of their bad faith in withholding the plan documents and their intent to cause prejudice to Plaintiffs.

The Court recognizes that some of the delay in Plaintiffs receiving the documents was attributable to factors other than Good and Winn's malfeasance. Plaintiffs did not file their initial Complaint until November 1, 2017, 404 days after the Plaintiffs filed their Appeal. Plaintiffs amended their Complaint twice and did not add the failure to produce documents cause of action until their final amended Complaint submitted on March 19, 2018, 138 days after the initial Complaint. The Court's own scheduling also played a role in the delay, as the discovery period in the present case did not commence until April 5, 2018. Because the delay in receiving the documents at least <u>partially</u> stemmed from factors outside of Good and Winn's bad conduct, the Court finds it appropriate to award a reduced rate of $55 per day, for 748 days, resulting in a total penalty of $41,140.

The Court declines to impose the daily penalty separately for each of five documents,[6] as requested by Plaintiffs. Plaintiffs have not pointed to any statutory or judicial authority that suggests Congress intended to apply the statutory penalty per document requested. See 29 U.S.C. § 1132 (stating that "each violation . . . with respect to any single participant or beneficiary, shall

---

[6] Plaintiffs include the administrative record as part of this request.

be treated as a separate violation") (emphasis added). Imposing the penalty per requested document is also inconsistent with precedent in this Circuit. See Faircloth, 91 F.3d at 659 (affirming the district court's determination of awarding a single penalty relating "[(1)] to the Form 5500s and [(2)] the contracts with custodians of assets, investment managers, and insurers of plan assets"); see also Carroll v. Continental Automotive, Inc., 2015 WL 9942662, at *7 (W.D.N.C. Aug. 31, 2015) (imposing a flat rate of fifty dollars per day for failure to turn over multiple documents). Finally, applying such a rule would result in penalty that is disproportionate to what is necessary to punish Good and Winn for their misconduct in this case.

The Court finds that a penalty of $41,140 is a sufficient and reasonable penalty to deter similar misconduct by plan administrators. See Faircloth, 91 F.3d at 659 (holding that the purpose of the civil penalty is to "punish noncompliance with ERISA"). The Court notes that the overall amount of $41,140 is generally higher than penalties imposed by other courts, which reflects both the egregiousness of Good and Winn's misconduct as well as the extraordinary length of delay in this case. See Mullins, 424 F. App'x at 222 (affirming a district court award of $18,400); Chaffin v. NiSource, Inc., 703 F. Supp. 2d 579, 599 (S.D. W.Va. 2010) (imposing a fine of $18,100 for a 362 day delay); Brooks v. Metrica, Inc., 1 F. Supp. 2d 559, 569 (E.D. Va. 1998) (imposing a fine of $14,320 for a 157 day delay). Good and Winn not only failed to turn over plan documents for an extremely long period of time, but used Plaintiffs' ignorance of the plan to further prejudice Plaintiffs in litigation by taking factual positions that were directly contradicted by the plan documents. Thus, this penalty award amount is necessary to effectuate the purposes of 29 U.S.C. § 1132(c)(1)(B).

**F.      Count VII: Attorney's Fees and Applicable Interest**

29 U.S.C. § 1132(g)(1) provides, "[i]n any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). In determining whether to award attorney's fees, courts consider five factors:

> (1) the degree of opposing parties' culpability or bad faith; (2) the ability of opposing parties to satisfy a fee award; (3) whether a fee award against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.

Sedlack v. Braswell Servs. Grp., Inc., 134 F.3d 219, 227 (4th Cir. 1998); see Quesinberry, 987 F.2d at 1029. Although the court considers these five factors, the "test is not a rigid one, but rather provides 'general guidelines' for determining whether to award fees." Id.

Most of these factors weigh heavily in favor of awarding Plaintiff attorney's fees. First, as discussed throughout this order, Defendants acted in extreme bad faith by misappropriating funds, improperly handling Plaintiffs' medical claim, and failing to turn over crucial plan documents. Second, a portion of Plaintiffs' claims sought to recover benefits on behalf of other beneficiaries of the plan. The resolution of a related Department of Labor action, Acosta v. Good, et al., 3:19-cv-119-FDW-DCK (W.D.N.C. Filed Mar. 7, 2019), which was brought on behalf of all plan beneficiaries, was significantly furthered due to Plaintiffs' efforts in pursuing this action.

Regarding the last factor, many of Defendants' factual positions were taken in bad faith for the purposes of delaying litigation. (See e.g., Doc. No. 39, p. 2 (denying that SmartCore was the plan administrator for the Plan under ERISA), p. 3 (denying allegations regarding the basic framework of the plan), p. 3 (denying that Defendants withheld monies from participant

paychecks)).  Similarly, Defendants asserted extremely weak and frivolous legal defenses to attempt to stonewall this action.  Up through summary judgment, Defendants steadfastly maintained the position that Plaintiffs' had failed to exhaust administrative remedies by filing a timely appeal, despite not being able to point to an official denial of the claim that comported with ERISA.  (See Doc. No. 72-1, p. 9); see 29 C.F.R. § 2560.503-1(g) (requiring a denial to be in writing and to state, among other things: "[t]he specific reason or reasons for the adverse determination," "reference to the specific plan provisions on which the determination is based," and a "description of the plan's review procedures").  In their attempts to establish a denial date for this argument, Defendants pointed to a variety of events that they asserted established a denial date, none of which remotely met ERISA's requirements.  For example, Defendants asserted that on January 7, 2016, Starmark had called Eric Kinsinger to tell him that the procedure would not be covered.  (See id.; Doc. No. 80-3).  Defendants also argued that a bill sent to Eric Kinsinger by the hospital and an email that Eric Kinsinger himself sent to Will Winn operated as an acknowledgment that Starmark's cancellation of SmartCore's coverage was "an automatic denial of the Kinsingers' [claim]."  (Doc. No. 80, p. 9).  No provision within ERISA suggests that a claimant's own email can serve as a denial of claimant's own claim.  Defendants' suggestion that any of these events operated as an official denial which resulted in Plaintiffs' failure to exhaust administrative remedies was without merit and only served to further illustrate the dysfunction of Defendants' "claims process."  Plaintiffs were required to expend considerable resources to pursue this litigation against Defendants' bad-faith defenses.

For these reasons, the Court finds that, pursuant to 29 U.S.C. § 1132(g)(1), Plaintiffs are entitled to recover reasonable attorney's fees and costs with regards to their ERISA claims.

For similar reasons, the Court also finds that Plaintiff Eric Kinsinger is entitled to recover attorney's fees for bringing his North Carolina Wage and Hour Act claim. See N.C. Gen. Stat. § 95-25.22 ("The court, in any action brought under this Article may, in addition to any judgment awarded plaintiff, order costs and fees of the action and reasonable attorneys' fees to be paid by the defendant."); Fulk v. Piedmont Music Ctr., 531 S.E.2d 476, 482 (N.C. 2000) (holding that in North Carolina Wage and Hour Act cases, "the court in its discretion may award plaintiff attorney's fees").

Despite having no good faith basis for not paying the previously earned wages, Defendants nonetheless maintained until the day of the summary judgment hearing that Plaintiff Eric Kinsinger was not entitled to recover the unpaid wages. (See Doc. No. 80, p. 8). As an example of Defendants' frivolous defense of this claim, Defendants alleged that Eric Kinsinger sat for an anonymous interview with a television station and "the news report led directly to the SmartCore Defendants' business difficulties and inability to pay wages." Id. This long chain of attenuated events, Defendants argued, showed that Eric Kinsinger caused his own damages. (See Doc. No. 80, p. 8 ("SmartCore Defendants contend that Mr. Kinsinger acted in bad faith and failed to mitigate his damages.")). The Court finds this specific argument to be without legal merit, and finds that Defendants generally did not assert a good faith defense with respect to the Wage and Hour Claim. Thus, attorney's fees under N.C. Gen. Stat. § 95-25.22 are warranted. Even though Defendants conceded liability on these claims at summary judgment, this concession happened nearly two years after the lawsuit was brought and Plaintiffs are entitled to recover the fees and costs associated with the claim.

## CONCLUSION

For the foregoing reasons:

### Count I:

1.      Judgment is entered in favor of Plaintiff Eric Kinsinger on Count I of the Amended Complaint, (Doc. No. 33), for wages in the amount of $6,250.  This judgment is doubled under N.C. Gen. Stat. §95-25.22 to $12,500.

2.      Plaintiff Eric Kinsinger is entitled to pre-judgment interest under N.C. Gen. Stat. § 95-25.22(d) at the North Carolina interest rate specified in N.C. Gen. Stat. § 24-1 of eight percent. Interest will accrue separately for each paycheck during the period of nonpayment from the date each paycheck would have been paid.  See N.C. Gen. Stat. §95-25.22(a).

3.      Plaintiff Eric Kinsinger is entitled to post-judgment interest under North Carolina law.

4.      This judgment for Plaintiff Eric Kinsinger on Count I is imposed jointly and severally against all Defendants.

### Count II:

5.      Judgment is entered in favor of Plaintiff Eric Kinsinger on Count II of the Amended Complaint for breach of contract.  However, because this claim was plead in the alternative to Count I, the Court finds that this claim is moot.

### Count III:

6.      Judgment is entered in favor of Plaintiffs on Count III of the Amended Complaint, in accordance with the terms of the consent judgment signed by all parties on June 4, 2019.  (Doc. No. 116).

7.      All Defendants are jointly and severally liable to Plaintiffs for prejudgment interest on this claim at a rate of eight percent, with pre-judgment interest accruing from February 17, 2016 through the date of the Consent Judgment, June 4, 2019

**Count IV:**

8.      Judgment is entered in favor of Plaintiffs, on behalf of the Plan, on Count IV of the Amended Complaint for breach of fiduciary duty under 29 U.S.C. § 1132(a)(2). Defendants SmartCore, Good, and Winn are jointly and severally liable to Plan participants for breach of fiduciary duty.

9.      Defendants SmartCore, Good, and Winn are hereby ordered to make restitution to Plan participants and/or beneficiaries in accordance with the Consent Judgment and Order entered in the related action, <u>Acosta v. Good, et al</u>, 3:19-cv-119-FDW-DCK, Doc. No. 22 (W.D.N.C. Filed Aug. 19, 2019).

**Count V:**

10.     Count V of Plaintiffs' Amended Complaint, seeking other appropriate equitable relief under 29 U.S.C. § 1132(a)(3), is rendered moot in light of the Court's judgment in favor of Plaintiffs under Counts III and IV.

**Count VI:**

11.     Judgment is entered in favor of Plaintiffs on Count VI of their Amended Complaint for statutory damages under 29 U.S.C. §§1024 and 1132(c). As a penalty, the Court awards $55 per day for the documents that Defendants Good and Winn failed to produce to Plaintiffs for 748 days. The total penalty awarded under 29 U.S.C. §§1024 and 1132(c) is $41,140.

12.     Defendants Good and Winn, as plan administrators at the time of Plaintiffs' request, are jointly and severally liable to Plaintiffs for this amount.

**Count VII:** [7]

13.     Plaintiffs' are entitled to recover reasonable attorneys' fees and costs under 29 U.S.C. §1132(g) for their ERISA claims.

14.     Plaintiff Eric Kinsinger is entitled to recover reasonable attorney's fees and costs from his North Carolina Wage and Hour Act claims pursuant to N.C. Gen. Stat. § 95-25.22.

15.     All Defendants are jointly and severally liable to Plaintiffs for these attorneys' fees.

16.     Plaintiffs are entitled to post judgment interest at the applicable federal rate for all judgments arising from Plaintiffs' ERISA claims entered above.

IT IS FURTHER ORDERED that Plaintiffs' should file a Motion for Attorney's Fees within twenty-eight (28) days of entry of this order, including all necessary documentation of fees and costs.  Plaintiffs' should also file a Motion to Alter Judgment within twenty-eight (28) days with calculations for the amount of prejudgment interest to be awarded on each claim.  Either party may file a Rule 59(e) Motion to Alter or Amend the Judgment within twenty-eight (28) days of this order's entry.

Pursuant to Rule 58 of the Federal Rules of Civil Procedure, the Court's judgment will also be stated in a separate document filed contemporaneously with this order.

---

[7] For the purposes of efficient organization, the Court has moved some of the other requested relief (i.e. prejudgment interest for wages) under this Count to coincide with their respective claims.

IT IS SO ORDERED.

Signed: August 26, 2019

Frank D. Whitney
Chief United States District Judge