UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:17-cv-00643-FDW-DCK

| | |
|---|---|
| ERIC KINSINGER and DENISE KINSINGER, )<br>)<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>SMARTCORE, LLC; )<br>SMARTCORE ELECTRIC, LLC; )<br>SMARTCORE ELECTRICAL SERVICES, )<br>LLC; SMARTCORE, LLC GROUP )<br>HEALTH BENEFIT PLAN; STEVEN )<br>MATTHEW GOOD and WILLIAM H. )<br>WINN, JR., )<br>)<br>Defendants. )<br>) | ORDER |

THIS MATTER is before the Court upon Plaintiffs' two post-judgment motions, the Motion for Attorney Fees and Costs (Doc. No. 129) and Motion to Alter Judgment to Include Prejudgment Interest (Doc. No. 130). Defendant William H. Winn, Jr. filed responses opposing Plaintiff's motions (Docs. No. 132, 133), and Plaintiffs replied (Docs. No. 134, 135). The motions are ripe, and the Court addresses each in turn.

**I. Background**

This is an Employee Retirement Income Security Act ("ERISA") case involving claims by Eric and Denise Kinsinger ("Plaintiffs") for seven claims for relief against the above-captioned corporate entities and Defendants Matthew Good and William H. Winn, Jr. individually ("Defendants"). The Court issued a written order on August 21, 2019, awarding Plaintiffs attorneys' fees and costs for the expenses incurred in pursuing this action as well as prejudgment

1

and post-judgment interest. (Doc. No. 126). This ruling followed extensive litigation between the parties concerning Plaintiffs' claims for unpaid wages and benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).

Plaintiffs were participants in the SmartCore LLC, Group Health Plan (the "Plan") set up to provide employees and their dependents payment for major medical benefits. (Doc. No. 126, p.7). In February of 2016 Plaintiffs were informed the Plan's insurance policy had been canceled for nonpayment effective January 1, 2016. (Doc. No. 126, p.5). Plaintiffs filed suit against Defendants in November 2017 after they had exhausted all administrative remedies related to the Plan. (Id. at 8). Plaintiffs filed a second amended complaint in March of 2018 raising seven causes of action: (1) unpaid wages; (2) breach of contract; (3) benefits due, based on the failure to pay fees; (4) breach of fiduciary duty; (5) injunctive and other appropriate equitable relief under 29 U.S.C. §1132(a)(3) for (a) failure to pay withheld participant contribution and (b) misrepresentations made by Defendants regarding coverage by the Plan; (6) failure to provide Plan documents and record; (7) attorneys' fees, interest and costs pursuant to 29 U.S.C. §1132(g), ERISA §502(g) and N.C. Gen. Stat. §95-25.22(d).

In February 2019, Defendants conceded at a hearing before this Court that they had violated the North Carolina Wage and Hour Act and owed Plaintiff unpaid wages in the amount of $6,250, statutory interest, and double damages pursuant to N.C. Gen. Stat. §95-25.22 (Doc. No. 86, p.1). In June 2019 the Court entered a Consent Judgment regarding Plaintiffs' claim for ERISA benefits under ERISA §502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B). (Doc. No. 116). Finally, in August of 2019 this Court ruled in favor of Plaintiffs on the remaining ERISA claims. (Doc. No. 126). The Court

also ruled Plaintiffs are entitled to recover attorney fees associated with their NC wage and hour claim, ERISA claims, and post judgment interest. (Id. at 13-16).

## II. Reasonable Attorneys' Fees

"In calculating an award of attorney's fees, a court must first determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 243 (4th Cir. 2009). Courts are guided by twelve factors known as the Johnson/Barber factors to determine a reasonable rate and reasonable number of hours:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Id. at 243–44 (quoting Barber v. Kimbrell's Inc., 577 F.2d 216, 226 n. 28 (4th Cir. 1978)). The Court accordingly considers each factor below to arrive at a reasonable award in this matter.

1.  Time and Labor Expended

Plaintiffs' Motion seeks attorneys' fees amounting to $321,535.00 based on the efforts of two attorneys and a paralegal expended on Plaintiffs' behalf by Marcellino & Tyson, PLLC ("the Firm"). Plaintiffs submitted a brief and declarations supporting their claim along with itemized time sheets for the time and labor expended over the course of this action. Defendant Winn concedes that a fee award is appropriate in this matter—indeed the Court already ruled to that effect in its Order—but Winn contests the reasonableness of Plaintiffs' requested fees. In reply,

3

Plaintiffs amend their request and ultimately seek attorneys' fees in the amount of $336,780.00 to include an additional 46.3 hours spent preparing their replies regarding fees and costs along with their reply regarding their Motion to Amend Judgment to include prejudgment interest. (Doc. No. 134, at 8).

Defendant Winn raises multiple objections to the amount of Plaintiffs' request for attorney fees and costs: 1) Plaintiffs made unreasonable settlement efforts and incurred unrecoverable fees thereafter, 2) Plaintiffs' paralegal performed non-compensable clerical work, 3) attorney time entries reflect failures of billing judgment including background research and clerical tasks, 4) excessive entries for drafting and revising Plaintiffs' amended complaint, and 5) block billing. The Court addresses each argument in turn.

a)  Plaintiffs' Settlement Efforts

Even in cases where plaintiffs bring meritorious claims, "it is a salutary principle that a prevailing party should not be permitted to inflate a fee award by using unreasonable settlement demands to extend a case." E.E.O.C. v. Nutri/System, Inc., 685 F. Supp. 568, 578 (E.D. Va. 1988).

Defendant Winn alleges that Plaintiffs unreasonably rejected Defendant's settlement offer on January 11, 2019 and therefore cannot recover $228,189.00 in attorney fees incurred after that date. (Doc. No. 133, p. 5). However, the Court finds Plaintiffs' rejection of the January 11, 2019 settlement offer was not unreasonable. Plaintiffs had reasonable concern that the time requested by Defendants would further delay litigation because it would require extending the summary judgment briefing deadline. (Doc. No. 133-1). Additionally, Plaintiffs demanded Defendants file the confessions of judgment without any act of default in order to ensure collection. Disagreements over the method of collection and potential prolonging of litigation are important considerations

4

in settlement negotiation. Further, Plaintiffs did not cease settlement negotiations after rejecting Defendants' counteroffer but continued efforts to settle the case. (Doc. No. 133-2.) For the reasons stated above the Court finds Plaintiffs did not unreasonably reject the January 11, 2019 settlement offer and a fee alteration is unnecessary.

b) <u>Paralegal Clerical Work</u>

Defendants contend Hanna Risser was not a certified paralegal and therefore her documented hours should be excluded from the award as clerical work. Legal work performed by paralegals is recoverable under fee shifting statutes. <u>Doe v. Kid</u>, 656 F. App'x 643, 655-56, n.2 (4th Cir. 2016) (paralegal work billed at $140 per hour was reasonable); <u>Missouri v. Jenkins</u>, 491 U.S. 274, 288, n.10 (1989). Whether Risser performed her duties in this case as a paralegal or law clerk is of no consequence to the Court due to her requested rate of $95. Other certified paralegals at Marcellino & Tyson, PLLC request a rate of $140/hour. (Doc. No. 129-3 ¶ 16.) The Court finds the reduced rate Ms. Risser requests relative to paralegal work is consistent with her lack of certification and no fee alteration is warranted.

c) <u>Attorney Research and Clerical Tasks</u>

Regarding attorney research, "'time spent maintaining competency to practice law is part of the cost of doing business' and is not compensable." <u>Triplett v. N. Carolina Dep't of Pub. Safety</u>, No. 5:15-cv-00075, 2017 WL 3840422, at *4 (W.D.N.C. Sept. 1, 2017) (quoting <u>Certain v. Potter</u>, 330 F. Supp. 2d 576, 582 (M.D.N.C. 2004)). "However, there is no per se rule that research time is never compensable" and "counsel are not forbidden from receiving fees for background research if the research is (1) relevant and (2) reasonable in terms of time for the scope and complexity of the litigation." <u>Certain</u>, 330 F. Supp. 2d at 583 (internal quotation marks omitted). Furthermore,

5

"where the movant has satisfied the Court that experienced, skilled counsel have conducted relevant legal research in good faith, the number of allowable hours in the lodestar computation will not be reduced absent a showing of specific grounds." Id. (quoting Wileman v. Frank, 780 F. Supp. 1063 (D. Md. 1991)). "The complexity of the issues involved in a given case will impact the compensability for background research." Triplett, 2017 WL 3840422, at *4.

The Court has carefully reviewed the log entries related to research submitted by Plaintiff's counsel and finds no specific grounds to warrant a reduction to these entries. Plaintiff's counsel spent years litigating this case which involved multiple complex legal issues and the research entries adequately specify the research being conducted. Turning to the 2019 entries contested by Defendants, the unique circumstances in this case required counsel to research multiple avenues of liability and the various potential equitable remedies. In response to these challenges Plaintiff's counsel billed eight entries in a ten-day period which primarily relate to research. These entries describe tasks such as "Continue research on ERISA claims and potential equitable remedies" or "continue researching available equitable remedies". (Doc. No. 129-2). The Court finds this research to be reasonable and pertinent in this case because Plaintiff's counsel was in the process of preparing the trial brief which was eventually drafted on 5/14/19 and noted in the billing records as "Draft and revise trial brief". (Id.) The trial brief addressed complexities in Plaintiffs' case and was reasonably calculated as necessary to resolve the matter at hand. Research done to prepare this document was therefore compensable. Accordingly, the Court finds Plaintiffs' billing logs are adequately detailed to reflect the attorneys' time expended on research. (Doc. No. 134.)

Defendants also seek a reduction to Plaintiff's billing log for tasks that are purely clerical in nature. (Doc. No. 133 at 10). Purely clerical tasks are generally allocated to the law

6

Case 3:17-cv-00643-FDW-DCK   Document 145   Filed 06/03/20   Page 6 of 15

firm's overhead and not billable to the client. Stortz v. Cherokee Ins. Co., No. 5:16-cv-200, 2018 U.S. Dist. LEXIS 62949, at *8 (W.D.N.C Apr. 12, 2018). It is within the district court's discretion to reduce a fee request that includes excessive clerical tasks, and "clerical tasks include filing documents, preparing and serving summons, and filing and organizing client papers." Triplett, 2017 WL 3840422, at *5 (citing Neil v. Comm'r of Soc. Sec., 495 Fed. Appx. 845, 847 (9th Cir. 2012)).

The Court has found $510 in non-reimbursable clerical entries in Plaintiffs' billing record. Defendant Winn points to numerous entries related to preparation of documents arguably clerical in nature such as 1/15/2018 "re-served Dfdts", 1/19/2018 "serving process on Defendants", and 1/19/2018 "confirmed service to Defendant Winn". (Doc. No. 133 at 10). Tasks related to service are purely clerical and therefore the $510 billed for these tasks should be omitted from the Plaintiff's billing record. Based on the foregoing the Court excludes $510 in requested clerical tasks from the fee award.

d)        Excessive Entries

Defendants argue Plaintiffs' billing log contains entries that are "excessive, redundant, or otherwise unnecessary, and should be reduced by the court." (Doc. No. 133, p.11). As stated above, when determining the reasonableness of submitted entries the Court must weigh the time and labor expended against the novelty and difficulty of the question. See Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 243 (4th Cir. 2009).

Specifically, Defendants argue Plaintiffs' counsel spent an unreasonable amount of time drafting the amended complaints because those amended complaints were substantially similar to the previous versions. Plaintiffs seek $28,350 in hours related to the drafting and researching the

7

original complaint, first amended complaint, and second amended complaint. (Doc. No. 129-2.)

The Court has reviewed the relevant documents and finds first that the 33 hours Plaintiffs' counsel billed to the original Complaint (Doc. No. 1) is reasonable and no alteration is warranted. Second, aside from eight added paragraphs, the first amended complaint is identical to the original Complaint. (Docs. No. 1, 3). As Plaintiffs' counsel recycled a substantial portion of the Complaint in drafting the First Amended Complaint, the Court finds the requested 15.1 hours excessive and applies a 30% reduction to the fees sought for drafting the first amended complaint. Third and finally, the second amended complaint was substantially different from the original or first amended complaints because it added factual allegations, a cause of action, and articulated new theories of recovery. (Doc. No. 33.) The second amended complaint was also forty paragraphs and ten pages longer than the original complaint, and the Court is persuaded that 38 hours billed in drafting the second amended complaint is not unreasonable and no alteration is warranted. Thus, the Court deducts $1,488 from Plaintiffs' fee request due to excessive entries.

Defendants contend that Plaintiffs' counsel's billing records do not clearly specify that Plaintiffs are billing in tenth-hour increments because only once does a one-tenth of an hour entry appear in the Plaintiff's billing records out of 717 total entries. (Doc. No. 133 at 11.) The Court has reviewed the relevant documents finds nothing inherently untrustworthy about a small percentage of .1 entries. (Doc. No. 129-2.) Plaintiff's billing records contain numerous short time entries consistent with tenth-hour increments.

Defendants also claim the billing records have been rounded up to reflect a minimum billing increment of .2 hours (Doc. No. 133 at 13.) The Court has reviewed the entries Defendants contend are inflated and finds no evidence Plaintiff's counsel billed at a .2 hour minimum. (Doc.

8

No. 129-2.) The entries on 11/2/17 "downloaded file summons" and the short email sent 1/10/19 are 2 out of 717 entries and are not reflective of Plaintiffs' billing records as a whole. (Id.) Based on the foregoing, the Court finds Plaintiffs' billing practices to be consistent with a tenth-hour billing increment and no alteration is warranted.

e) <u>Block Billing</u>

Defendants contend Plaintiffs' counsel engaged in the practice of block billing on multiple occasions which calls into question the reliability of the Plaintiff's billing records generally. ( Doc. No. 133.) "The practice of 'block billing' involves listing multiple tasks within a single time entry. This practice is problematic because it does not provide the district court with a clear sense of how many hours were performed on a particular task because multiple tasks are lopped into a single block of hours." <u>Triplett v. N. Carolina Dep't of Pub. Safety</u>, No. 5:15-cv-00075, 2017 WL 3840422, at *4 (W.D.N.C. Sept. 1, 2017). Overbroad listing of tasks within a single billing entry "frustrate[s] a court's attempt to review whether an attorney's hours on a given task were reasonable versus excessive." <u>Id.</u>

The Court has extensively reviewed Plaintiff's counsels billing logs and finds that some entries constitute block billing. Defendant Winn lists only four instances of block billing amongst the hundreds provided by Plaintiff's counsel. (Doc. No. 133.)  However, the Court is persuaded that the entries Defendant lists on: 11/2/2016 "Drafted revised demand letter and complaint, inclusive of research re: potential claims under NC UDTPA and ERISA 510", 11/3/2016 "drafted and revised complaint and demand letter, inclusive of conference with BLT RE strategy", 11/9/2016 "drafted and revised complaint and demand letter; inclusive of research with respect to fiduciary claims", and 11/10/2016 "drafted and revised complaint and demand letter; inclusive of

9

research with respect to fiduciary claims" do qualify as block billing and will be reduced by 10% for a total reduction of $375. See Triplett, 2017 WL 3840422 at *4 (applying a 10% reduction to an entry to account for block billing and purely clerical work used in entry).

2.  Novelty and Difficulty of the Questions Raised

ERISA litigation is a complex area of federal law that is constantly evolving. In re Wachovia Corp., No 3:09-cv-262, 2011 U.S. Dist. LEXIS 123109, at *22 (W.D.N.C. Oct, 2011) ("ERISA litigation of the type presented here is a rapidly evolving area of the law. New precedents are frequently issued, and demands on counsel and court are complex and require the devotion of significant resources.").

3.  Skill Required to Properly Perform the Legal Services

As stated above, "ERISA is a complex area of federal law, requiring particular skill and experience to properly perform the legal services rendered in such cases." Vincent v. Lucent Technologies, Inc., No. 3:07-cv-240, 2011 U.S. Dist. LEXIS 123780, at *12 (W.D.N.C. Oct. 25, 2011). Plaintiffs' counsel have the required skill and experience. (See Docs. No. 129-3, 129-4, 129-6.)

4.  Attorneys' Opportunity Costs in Pressing the Litigation

Marcellino and Tyson, PLLC is a small law firm and litigating this case required a considerable amount of time and effort, which Plaintiff's counsel could have devoted to other matters. (Doc. No. 129-4 ¶ 24.); see Vincent, 2011 U.S. Dist. LEXIS 123780, at *12-13 (concluding that accepting plaintiff's case prevented plaintiff's counsel from accepting other paying work where plaintiff's counsel were attorneys at a small firm of only ten attorneys.)

5.  Customary Fee for Like Work

Plaintiffs request an hourly rate of $400 for partners and $250-$300 for associates. (Doc. No. 129-2.) Plaintiffs submitted the affidavits of other attorneys familiar with Plaintiffs' counsel and the prevailing market rates in the Western District of North Carolina. (Doc. No. 129-7., Doc. No. 129-8.) These affidavits support the reasonableness of the hourly rates requested.

6. <u>Attorneys' Expectations at the Outset of the Litigation</u>

The Court receives no guidance from this factor in the reasonableness analysis for an award of attorneys' fees. <u>See</u> <u>Ramirez</u>, 2019 WL 4199808, at *5.

7. <u>Time Limitations Imposed by the Client or Circumstances</u>

The Court receives no guidance from this factor in the reasonableness analysis for an award of attorneys' fees. <u>See</u> <u>id.</u>

8. <u>Amount in Controversy and Result Obtained</u>

Plaintiffs' counsel was successful in obtaining a favorable judgment for Plaintiff in the amount of $100,774.01. (Doc. No. 126). This judgment consists of $14,263.5 in recovered wages, $41,140 recovered as ERISA statutory penalty, $21,404 Department of Labor Statutory award, and $23,966.45 recovered for medical benefits. (<u>See</u> Doc. No. 134).

9. <u>Experience, Reputation, and Ability of the Attorneys</u>

Bryan L. Tyson has been practicing ERISA litigation since 2002. (Doc. No. 129-4 ¶ 5). He is an active member, in good standing, of both the Georgia State Bar and North Carolina State Bar. (<u>Id.</u> at ¶ 6.) He is also admitted to practice before the Western, Eastern, and Middle District Courts of North Carolina, the Southern District of Georgia and the United States Court of Appeals for the Fourth and Sixth Circuits. (<u>Id.</u>) Rachel C. Matesic is an active member in good standing of the North Carolina State Bar. (Doc. No. 129-3 ¶ 4) She is also admitted to

11

practice before the Western District of North Carolina. (Id.) She began working at Marcellino and Tyson, PLLC in 2016 and has devoted a large portion of her practice to ERISA litigation since that time. (Id. at ¶ 3.) Hanna Aucklund has been practicing civil litigation since 2008. (Doc. No. 129-6 ¶ 2). She has focused on ERISA litigation since joining Marcellino and Tyson, PLLC in 2019. (Id. at ¶ 3.) She is an active member in good standing of the North Carolina State Bar and an inactive member in good standing of the Arizona State Bar. (Id. at ¶ 4)

10.       Undesirability of the Case Within the Legal Community

The Court does not find anything particularly undesirable about this case.

11.       Nature and Length of Professional Relationship Between Attorney and Client

It does not appear to the Court that Plaintiffs' counsel had professional relationships with Plaintiffs prior to litigation. (See Doc. No. 129-3 ¶ 6; Doc. No. 129-4 ¶ 8.; Doc. No. 129-6 ¶ 6).

12.       Attorneys' Fee Awards in Similar Cases

This Court has awarded similar fees in comparable, though perhaps less fiercely litigated, ERISA cases. See Vincent, No. 3:07-cv-240, 2011 U.S. Dist. LEXIS 123780; Ramirez, No. 3:18-cv-12, 2019 WL 4199808. Additionally, Plaintiffs have submitted affidavits from experienced attorneys attesting to the reasonableness of the rate requested by Plaintiffs' counsel. (Doc. No. 129-7., Doc. No. 129-8.)

Based on the reasons stated above, the Court finds all hours claimed by Plaintiffs' counsel to be reasonable and the corresponding attorney rates reasonable except for those reductions applied to account for vague entries and block billing. Therefore, the Court awards Plaintiffs attorney fees in the amount of $334,407.00.

### III. Costs

Plaintiffs also seek costs of $4,525.75 jointly and severally against all Defendants. (Doc. No. 129-1, p. 18). ERISA allows cost recovery for the prevailing party. 29 U.S.C. § 1132(g)(1). This Court has already specified Plaintiffs are entitled to recover costs associated with litigation. (Doc. No. 126, p.25). Rule 54(d)(1) states "[u]nless a federal statute, these rules, or a court order provides otherwise, cost . . . should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). "Further, ERISA expressly permits a district court to award costs in the court's discretion, but the statute does not alter the general rule in favor of awarding costs to the prevailing parties." Williams v. Metropolitan Life Ins. Co., 609 F.3d 622, 636 (4th Cir. 2010). Plaintiffs are entitled to recover administrative and witness costs associated with pursuing their claims. (Doc. No. 126, p.25). For the reasons stated above, the Court awards Plaintiffs $4,525.75 in costs.

### IV. Interest

Plaintiffs request an award of prejudgment interest for wrongful denial of medical benefit in the amount of $10,528.77 and prejudgment interest for unpaid wages in the amount of $1,763.56. The Supreme Court has held that "prejudgment interest is an element of complete compensation." West Virginia v. United States, 479 U.S. 305, 310 (1987). "ERISA does not specifically provide for prejudgment interest, and absent a statutory mandate the award of prejudgment interest is to prevent unjust enrichment." Quesinberry v. Life Ins., 921 F.2d 1017, 1030 (4th Cir. 1993). Generally, the purpose of prejudgment interest is to "compensate [a party] for the loss of use of his funds." Id.

Defendant Winn does not contest that Plaintiffs are entitled to $1,763.56 in pre-judgment interest for unpaid wages. Accordingly, the Court awards Plaintiffs pre-judgment interest for unpaid wages in the amount of $1,763.56.

Plaintiffs request an award of prejudgment interest int he amount of $10,528.77 based on the $39,931.45 amount CHS initially billed Smartcore. (Doc. No. 126 at ¶ 23.) Defendant Winn does not contest Plaintiffs are entitled to prejudgment interest for wrongful denial of medical benefits but disputes the computation method requested by the Plaintiff. Defendants contend the amount of prejudgment interest should be calculated based on the amount Plaintiffs actually paid CHS: $18,965.73. (Doc. No. 132 ¶ 10.) The Court acknowledges that Plaintiffs were deprived of the use of their funds and are entitled to prejudgment interest for medical bills. However, calculating this amount based on the amount CHS initially billed, but that Plaintiffs did not ultimately pay, would result in a windfall to the Plaintiffs relative to the sum Defendants unjustly deprived them of in fact. See Stortz v. Cherokee Ins. Co., No. 5:16-cv-200, 2018 U.S. Dist. LEXIS 62949 (W.D.N.C. Apr. 12, 2018) ("Plaintiff was not required to pay the medical expenses himself, nor has he claimed any specific harm from the delay other than the time spent prosecuting this case. Accordingly, the court finds an award of prejudgment interest would result in a windfall."). Therefore, the Court awards prejudgment interest of $5,000.72 based on the $18,965.73 figure Plaintiffs actually paid at 8% annual interest from 2/17/2016 to 6/4/2019.

## V. Conclusion

Accordingly, the Court hereby GRANTS in part and DENIES in part Plaintiffs' Motion for Attorney Fees and Costs (Doc. No. 129) and Motion to Alter Judgment to Include Prejudgment Interest (Doc. No. 130) as follows:

1. Defendants shall pay Plaintiffs $334,407.00 in attorneys' fees;

2. Defendants shall pay Plaintiffs $4,525.75 in costs; and

3. Defendants shall pay Plaintiffs $1,763.56 in prejudgment interest related to unpaid wages and $5,000.72 in prejudgment interest related to wrongful denial of medical benefits.

IT IS SO ORDERED.

Signed: June 3, 2020

Frank D. Whitney
United States District Judge